Third, the State argues that the court of appeals' decision stands in direct conflict with its prior decision in *Mastakoski,* 738 N.W.2d 411. The State relies on *Mastakoski* to support its proposed interpretation. It is true that *Mastakoski* involved a judicial forfeiture procedure, but subdivision 9 was not an issue before the court. *See generally id.* at 413. Instead, the court relied on subdivision 7 to support its opinion. *Id.* at 414–15. *Mastakoski* does not address subdivision 9(f). But to the extent it is inconsistent, we hereby overrule *Mastakoski.*

## II.

STATE of Minnesota, Respondent,

v.

R.H.B., Appellant.

No. A11–0660.

Supreme Court of Minnesota.

Oct. 17, 2012.

818

Lori Swanson, Attorney General, Saint Paul, MN; and Thomas N. Kelly, Wright County Attorney, Greg T. Kryzer, Assistant Wright County Attorney, Buffalo, MN, for respondent.

Charles L. Hawkins, Minneapolis, MN; and Jennifer M. Macaulay, Saint Paul, MN, for appellant.

## OPINION

ANDERSON, G. BARRY, Justice.

The question presented by this case is whether the Wright County District Court erred when it granted appellant R.H.B.'s expungement petition. In May 2009 the State charged R.H.B. with first- and third-degree assault on the ground that R.H.B. injured a young child in his care. In November 2009 a jury found R.H.B. not guilty of both charges and the district court entered a judgment of acquittal. R.H.B. then petitioned the court for an order sealing the criminal records related to the alleged assault, and the court granted R.H.B.'s petition. The State appealed the district court's order granting the expungement and the court of appeals reversed. *State v. R.H.B.*, 805 N.W.2d 927 (Minn.App.2011). We granted R.H.B.'s petition for review and now reverse the court of appeals, and reinstate the district court order granting the expungement.

The material facts in this case are largely undisputed. In December 2006 R.H.B. allegedly dropped a young child for whom R.H.B.'s wife was providing daycare. A CT scan revealed that the child had a subdural hematoma, a localized blood clot in the brain. That discovery prompted an investigation by the Wright County Department of Human Services (Wright County DHS). Based on its investigation, the Wright County DHS issued a finding of maltreatment under a preponderance of the evidence standard.

In March 2007 the State charged R.H.B. with third-degree assault (substantial bodily harm) in violation of Minn.Stat. § 609.223, subd. 1 (2010). The State later amended its complaint to include a count of first-degree assault (great bodily harm) in violation of Minn.Stat. § 609.221, subd. 1 (2010). In November 2009 a jury returned verdicts of not guilty on both charges. The district court then entered a judgment of acquittal.

In January 2011 R.H.B. petitioned the district court for an order sealing his criminal records related to the alleged assault. In particular, R.H.B.'s petition requested an order sealing all arrest, pre-trial, and trial records held by the Wright County Sheriff's Department, the Wright County Department of Community Corrections, the Wright County District Court, and the Minnesota Bureau of Criminal Apprehension. R.H.B. requested expungement of his criminal record in the "interests of justice," but R.H.B. did not identify any specific disadvantages that he would suffer if the court denied his petition.

The State asked the district court to receive oral testimony on R.H.B.'s petition. The court, which had also presided over R.H.B.'s assault trial, denied the State's request but allowed the parties to submit affidavits supporting their arguments. In his affidavit, R.H.B. recited the facts of his arrest and acquittal and stated his residential address, his lack of a criminal record, his employment status as a truck driver, and his employment history.

The State submitted three affidavits to demonstrate the public's interest in keeping R.H.B.'s criminal record unsealed.

Molly Staehnke, a Child Protection Investigator with the Wright County DHS, stated the facts underlying the DHS's finding of maltreatment. Staehnke also explained that "[t]he public is served by keeping an accurate record because it assists in streamlining investigations about alleged incidents of past criminal activities." Marian Elkerton, a supervisor in the Licensing Division of the Wright County DHS, stated that the "Wright County [DHS] and other state licensing agencies have an interest in these records because they show a history of maltreatment." Finally, Barrett Chrissis, a Detective with the City of Buffalo Police Department, stated that access to a suspect's criminal background helps to streamline a criminal investigation and it "gives the investigating officer more tools and assists them in conducting their investigation." Chrissis also explained that knowledge of past conduct "helps a detective when they are questioning a suspect."

The district court granted R.H.B.'s petition under Minnesota's expungement law—Minn. Stat. ch. 609A (2010).[1] According to Minn.Stat. § 609A.03, subd. 5(b), if all pending actions and proceedings have been resolved in favor of an expungement petitioner, the district court "shall grant the petition" unless the party opposing the petition "establishes by clear and convincing evidence that the interests of the public and public safety outweigh the disadvantages to the petitioner of not sealing the record." Here, the district court granted R.H.B.'s expungement petition, concluding that "[t]he State has failed to prove by clear and convincing evidence"

that the public's interests outweigh R.H.B.'s interests. The State appealed the district court's order to the court of appeals, which reversed. The court of appeals held that the district court abused its discretion because the "district court had no specific disadvantage to [R.H.B.] against which to balance the interests of the public." *R.H.B.*, 805 N.W.2d at 929–30. Specifically, the court concluded that under Minn.Stat. § 609A.03, subd. 5(b), a petitioner "cannot rely solely on the fact that the criminal proceedings were resolved in his favor." *Id.* at 929. We granted R.H.B.'s petition to review the decision of the court of appeals.

## I.

Our resolution of this case turns first on the proper interpretation of Minnesota's expungement statute. Interpretation of a statute is a legal question subject to de novo review. *State v. Wertheimer*, 781 N.W.2d 158, 160 (Minn.2010). Interpretation of a statute begins with the statute's plain language. *Goodman v. Best Buy, Inc.*, 777 N.W.2d 755, 759 n. 3 (Minn. 2010). When the meaning of the plain language of a statute is clear and unambiguous, we must apply that meaning. *Frandsen v. Ford Motor Co.*, 801 N.W.2d 177, 181 (Minn.2011).

Minnesota Statutes section 609A.02, subdivision 3, authorizes an individual to petition the district court to seal "all records relating to an arrest, indictment or information, trial, or verdict ... if all pending actions or proceedings were resolved in favor of the petitioner." Minnesota Stat-

---

1. "There are two bases for the expungement of criminal records in Minnesota—Minn. Stat. ch. 609A ..., and the inherent judicial authority of the courts." *State v. S.L.H.*, 755 N.W.2d 271, 274 (Minn.2008) (footnote omitted). Under the latter basis, a court may expunge criminal records when "expunge-

ment is necessary to prevent serious infringement of constitutional rights." *Id.* (citation omitted) (internal quotation marks omitted). But we have held that the judiciary's inherent expungement authority extends only to records held by the judicial branch. *See id.* at 278–79.

utes section 609A.03, subdivision 5(b), further provides that upon a petition to seal a criminal record under section 609A.02, subdivision 3, the district court "shall grant the petition to seal the record unless the agency or jurisdiction whose records would be affected establishes by clear and convincing evidence that the interests of the public and public safety outweigh the disadvantages to the petitioner of not sealing the record." Minn.Stat. § 609A.03, subd. 5(b).

 Read together, these two statutes create a two-step procedure for statutory expungement.[2] Under step one, if all pending criminal actions or proceedings have been resolved "in favor of" an individual, he or she may petition the district court to seal the records related to the action or proceeding, and there is a statutory presumption that the court will grant the petition. We previously discussed this first step of the expungement statute in *State v. Ambaye*, 616 N.W.2d 256 (Minn. 2000). In *Ambaye*, we explained that once a petitioner meets the "legal threshold" contained in Minn.Stat. § 609A.02, subd. 3, he or she is "presumptively entitled to expungement." *Ambaye*, 616 N.W.2d at 257. But the statutory presumption created under step one is not absolute. Rather, it is a "rebuttable statutory presumption" that "shifts the burden of ... persuasion" to the opposing party. *Frandsen*, 801 N.W.2d at 181. Under step two of the procedure, the agency or jurisdiction holding the records may prevent expungement if the agency or jurisdiction "establishes by clear and convincing evidence" that the public's interests in keeping the records unsealed "outweigh[s] the disadvantages to the petitioner of not sealing the records."

Minn.Stat. § 609A.03, subd. 5(b); *see also Ambaye*, 616 N.W.2d at 258.

The decision of the court of appeals in this case contravenes the foregoing interpretation of the expungement statute. Contrary to the plain language of Minn. Stat. § 609A.03, subd. 5(b), the court concluded that "[a] petitioner seeking expungement cannot rely solely on the fact that the criminal proceedings were resolved in his favor." *R.H.B.*, 805 N.W.2d at 929. That interpretation essentially ignores subdivision 5(b)'s preliminary language, which commands that a district court "*shall* grant the petition to seal the record" if all pending proceedings have been resolved in the petitioner's favor. *See State v. Humes*, 581 N.W.2d 317, 319 (Minn.1998) ("The canons of statutory construction provide that 'shall' is mandatory." (citing Minn.Stat. § 645.44, subd. 16 (2010))); *see also Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000) (cautioning that "no word, phrase, or sentence" in a statute "should be deemed superfluous, void, or insignificant"). Indeed, if the preliminary language of subdivision 5(b) is to have any meaning, it must be that the fact of a prior acquittal is sufficient to justify expungement unless the party opposing expungement affirmatively meets its burden of persuasion.

## II.

With the proper interpretation of Minnesota's expungement statute in mind, we next address the application of the statute to R.H.B.'s expungement petition. R.H.B. was acquitted of all charges, so it is undisputed that "all pending actions and proceedings" were resolved in his favor. The parties disagree, however, about

---

2. An individual who cannot satisfy the legal threshold of Minn.Stat. § 609A.02, subd. 3, by establishing that all pending actions or proceedings have been resolved in his or her favor may petition for expungement of criminal records under Minn.Stat. § 609A.03, subd. 5(a). That provision is not at issue in this case.

whether the State met its burden of persuasion and rebutted the presumption of expungement. Because the State presented little more than generalities explaining why it is beneficial for State and county licensing agencies and police departments to maintain the criminal records of an acquitted defendant, we hold that the district court did not err when it granted R.H.B.'s petition.

### A.

 The appropriate standard of review of a district court's determination that the State failed to establish by clear and convincing evidence that the public's interest in keeping the records unsealed outweighed the disadvantages to the petitioner of not sealing the records is a question of first impression for our court. Standard of review issues present legal questions subject to de novo review. *See Am. Fed'n of State, Cnty. & Mun. Employees, Dist. Council No. 14 v. Minneapolis Cmty. Dev. Agency,* 520 N.W.2d 453, 455 (Minn.App.1994).

 The district court's factual findings are not in dispute.[3] Rather, the parties disagree over the court's weighing of the competing interests identified in the expungement statute. Section 609A.03, subdivision 5(b), requires the district court to balance competing interests based on the unique facts of each case. Specifically, subdivision 5(b) requires the court to determine whether the party opposing the petition has proved by clear and convincing evidence that "the interests of the public and public safety *outweigh* the disadvantages to the petitioner." (Emphasis added). A district court's weighing of competing interests is generally a discretionary task. *See City of North Oaks v. Sarpal,* 797 N.W.2d 18, 23 (Minn.2011) (cit-

ing *Lilyerd v. Carlson,* 499 N.W.2d 803, 811 (Minn.1993)). And we have previously said that when the district court "weighs the equities in a balancing test … the appropriate standard of review is the abuse of discretion standard." *Krmpotich v. City of Duluth,* 483 N.W.2d 55, 57 (Minn.1992) (citation omitted) (internal quotation marks omitted). Therefore, we will review for an abuse of discretion the district court's determination that the State failed to sustain its burden of persuasion.

### B.

 Under an abuse of discretion standard, we will not overrule the district court unless the court exercised its discretion in an arbitrary or capricious manner or based its ruling on an erroneous interpretation of the law. *Reed v. State,* 793 N.W.2d 725, 729 (Minn.2010). We may also reverse the district court if its ruling "is against the facts in the record." *Sarpal,* 797 N.W.2d at 24.

Here, the State presented three affidavits to support its argument that sealing R.H.B.'s criminal record would threaten public safety. Two affiants from the Wright County DHS said that open criminal records help the agency to "streamlin[e] investigations" about past criminal activities and may help to demonstrate a history or pattern of misconduct. And a detective from a municipal police department in Wright County stated that open criminal records give investigating officers "more tools," "assist[ ] them in conducting their investigation," "show potential gaps in their investigations," and "help[ ] [them] when they are questioning a suspect."

These statements are unremarkable and generalized, and could be submitted in nearly every expungement case. *See State*

---

**3.** A district court's findings of fact will not be disturbed unless they are clearly erroneous. *City of North Oaks v. Sarpal,* 797 N.W.2d 18,

24 (Minn.2011) (citing Minn. R. Civ. P. 52.01).

*v. Jones,* 753 N.W.2d 677, 696 (Minn.2008) (stating that the standard of clear and convincing evidence requires a party to do more than present minimal evidence to support its position). Tellingly, each of the State's affiants said that he or she was "submitting [an] affidavit to outline why it is in the public's interest to maintain *a Defendant's* criminal arrest record," rather than why it is in the public's interest to maintain *R.H.B.*'s criminal record. In other words, the State presented almost no evidence that sealing R.H.B.'s criminal record would present a unique or particularized harm to the public.[4] Therefore, on the record before us, we cannot say that the district court abused its discretion when it concluded that the State failed to overcome the presumption of expungement.

The State nevertheless argues that the district court erred by granting R.H.B.'s petition for two reasons, each based on the fact that R.H.B.'s petition did not identify any disadvantages that he would suffer if the court denied his petition. First, the State argues that R.H.B. failed to comply with the requirements of Minn.Stat. § 609A.03, subd. 2, which governs the content of an expungement petition. Second, the State argues that the district court failed to conduct the balancing test required by Minn.Stat. § 609A.03, subd. 5(b). More specifically, the State contends that its evidence of the public's interests in keeping R.H.B.'s records unsealed necessarily outweighs R.H.B.'s "non-existent disadvantages." For the following reasons, we reject the State's arguments.

Section 609A.03, subdivision 2, requires an expungement petitioner to state, among other things, "why expungement is sought . . . and why it should be granted." Minn.

Stat. § 609A.03, subd. 2(a)(4). In the view of the State and the court of appeals, this provision requires a petitioner to identify specific disadvantages that he or she will suffer if the court denies the petition. But that reading of subdivision 2(a)(4) adds a requirement that is not present in the statute's plain language. In this context, "why" means simply "for what purpose" or "reason." *See The American Heritage Dictionary of the English Language* 1979 (5th ed.2011) (defining "why" as "[f]or what purpose, reason, or cause; with what intention, justification, or motive"); *Webster's Third New International Dictionary of the English Language Unabridged* 2612 (2002) (defining "why" as "for what cause, reason, or purpose: on what account: to what end"). Hence, in our view, R.H.B.'s petition satisfies subdivision 2(a)(4) by stating that a jury found him not guilty of all pending charges and that granting his petition is in the "interests of justice."

We also reject the State's argument that the district court failed to balance the parties' interests, as required by Minn.Stat. § 609A.03, subd. 5(b). We concede that the court could have augmented its cursory analysis with more specific findings and conclusions. Nevertheless, the court's order demonstrates that the court balanced the public's interests in keeping R.H.B.'s criminal record unsealed against the disadvantages to R.H.B. The court correctly explained that because a jury found R.H.B. not guilty of all charges, the court's analysis must "start[ ] with a presumption of expungement, putting the burden on the [S]tate" to overcome that presumption by clear and convincing evidence. The court then found that R.H.B. has worked in trucking or construction for more than a decade, there is no evidence that R.H.B.

---

4. To the extent that it is in the public's interest to keep R.H.B.'s Wright County DHS records unsealed—including the DHS's finding of maltreatment—the district court's expunge-

ment order does not affect those records because R.H.B. never sought expungement of those records.

plans to work in childcare or a related field, there is no "pattern of violent or abusive behavior" by R.H.B., and R.H.B. has no criminal record. Finally, the court concluded, "[t]he State has failed to prove by clear and convincing evidence that the interests of the public and public safety outweigh the disadvantages to Petitioner of not sealing the record."

Although R.H.B.'s petition failed to list any specific disadvantages that he would suffer if the court denied his petition, there are certainly inherent disadvantages caused by unproven criminal accusations—such as personal and professional reputational damage—that would be suffered by *any* expungement petitioner. *See* Jon Geffen and Stefanie Letze, *Chained to the Past: An Overview of Criminal Expungement Law in Minnesota*, 31 Wm. Mitchell L.Rev. 1331, 1336–41 (2005) (listing some of those disadvantages). Moreover, as we explain above, a petitioner may satisfy his or her burden of production under Minnesota's expungement statute simply by establishing the fact of his or her acquittal. *See supra* Part I; *see also Braylock v. Jesson*, 819 N.W.2d 585, 589–90 (Minn. 2012) (defining the burden of production). Therefore, a petitioner is not required to prove specific disadvantages that he or she will suffer if the petition is denied.

In conclusion, we hold that the district court did not abuse its discretion when it granted R.H.B.'s expungement petition. We therefore reverse the decision of the court of appeals.

Reversed.

WRIGHT, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.