*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0560**

State of Minnesota,
Respondent,

vs.

A. Y. G., a/k/a A. Y. L.,
Appellant.

**Filed December 15, 2014
Reversed
Reyes, Judge**

Ramsey County District Court
File Nos. 62K007002130; 62K007002287; 62K704003454
62T707013819; 62CR122120

Lori Swanson, Attorney General, Gail A. Feichtinger, Assistant Attorney General, St. Paul, Minnesota (for respondent)

A.Y.G., Brooklyn Park, Minnesota (pro se appellant)

Considered and decided by Reyes, Presiding Judge; Cleary, Chief Judge; and Worke, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

Appellant, pro se, challenges the district court's order denying her request to expunge criminal records maintained by the Minnesota Department of Human Services (DHS). Because the district court abused its discretion in ruling that DHS submitted

clear and convincing evidence sufficient to overcome the statutory presumption favoring expungement, we reverse.

## FACTS

Appellant sought expungement of her criminal records relating to five separate court files from the Second Judicial District maintained by the Judicial and Executive Branches. All five charges were eventually resolved in appellant's favor. In 2004, appellant was charged with a violation of an order for protection and disorderly conduct, but the charges were dismissed later that year. On May 29, 2007, appellant was charged with public nuisance, but the charges were dismissed six months later pursuant to a continuance for dismissal. On June 14, 2007, appellant was charged with felony assault in the second degree. Twelve days later, appellant was charged with violation of an order for protection and a domestic-abuse no-contact order. All of these charges were dismissed on February 20, 2008, by the Ramsey County Attorney's Office. Finally, appellant was charged with misdemeanor theft in 2012 and was found guilty by a jury. This court reversed the conviction in an order opinion dated October 2, 2013. *State v. Gibson*, No. A12-2072 (Minn. App. Oct. 2, 2013) (order).

Pursuant to section 245C.15, subdivision 1, of the Minnesota Department of Human Services Background Studies Act (BSA), DHS used appellant's 2007 second-degree assault charge as a basis for disqualifying her from any position allowing direct contact with persons receiving services from programs licensed by DHS, Minnesota Department of Health, Department of Corrections, and unlicensed Personal Care Provider Organizations. Minn. Stat. §§ 245C.01-.34 (2012) (providing title in section 245C.01).

DHS determined that information from the St. Paul Police Department and the Ramsey County District Court showed that there was a preponderance of evidence that appellant committed felony second-degree assault. On February 20, 2014, DHS notified appellant's employer, Summit Fiscal Agency, of appellant's disqualification.[1] Appellant was subsequently terminated from her job at Summit Fiscal Agency, a position she had held for three years.

Appellant petitioned the court for expungement of her criminal record, and a hearing was held on March 5, 2014. At the hearing, DHS argued that it needed access to appellant's record in order to respond to any potential requests for reconsideration. The district court took the matter under advisement. On March 14, 2014, the district court granted expungement of all five charges in appellant's record maintained by the Judicial and Executive Branches, but denied expungement of records maintained by DHS.[2] The district court correctly stated that, under Minnesota law, a petitioner is presumptively entitled to expungement unless the public's interest in keeping the records unsealed outweighs the disadvantages the petitioner will face if expungement is not granted. Minn. Stat. § 609A.03, subd. 5(b) (2012). The court noted that criminal records are a necessary part of a DHS investigation into whether to disqualify an individual from working in order to protect vulnerable citizens. Because expunging the records would

---

[1] On February 20, 2014, DHS also sent a letter to appellant notifying her of the disqualification. The letter was originally sent to the wrong address. DHS sent the letter to the correct address on March 11, 2014.

[2] The public-nuisance charge was expunged in its entirety because public nuisance is not a disqualifying offense under the statute. DHS's records of the other four charges remained exempt.

impede the administrative investigation process, the district court concluded that DHS "has provided specific reasons as to why the public's interest outweighs [appellant's] interest." Appellant challenges the district court's decision on appeal.

## D E C I S I O N

Courts have the authority, both statutory and inherent, to grant expungement relief. *State v. Davisson*, 624 N.W.2d 292, 295 (Minn. App. 2001), *review denied* (Minn. May 15, 2001). Appellant's petition for expungement and the district court order granting expungement were based solely on statutory grounds. The Minnesota expungement statute allows for the expungement of criminal records if all pending actions and proceedings were "resolved in favor of the petitioner." Minn. Stat. § 609A.02, subd. 3 (2012). "A dismissal is, in a plain sense, a determination in the defendant's favor. If there was no valid admission or finding of guilt, the courts have held that such proceedings were resolved in favor of the petitioner." *State v. K.M.M.*, 721 N.W.2d 330, 333 (Minn. App. 2006).

Under the expungement statute, a petitioner is presumptively entitled to expungement of criminal records "unless the agency or jurisdiction whose records would be affected establishes by clear and convincing evidence that the interests of the public and public safety outweigh the disadvantages to the petitioner of not sealing the record." Minn. Stat. § 609A.03, subd. 5(b). Clear and convincing evidence requires "more than a preponderance of the evidence but less than proof beyond a reasonable doubt" and is shown where "the truth of the facts asserted is highly probable." *Weber v. Anderson*, 269 N.W.2d 892, 895 (Minn. 1978) (quotation omitted). We review for abuse of discretion

4

the district court's determination that DHS met its burden of persuasion. *See State v. R.H.B.*, 821 N.W.2d 817, 822 (Minn. 2012) (finding that when the district court is tasked with weighing the equities in a balancing test, the appropriate standard of review is abuse of discretion).

## I. Appellant's arguments

Appellant does not explicitly argue that the district court abused its discretion when it denied her request to expunge records maintained by DHS. Instead, appellant makes several arguments related to DHS's initial disqualification determination and her due-process rights.

First, appellant argues that the preponderance-of-the-evidence standard is not the correct standard to apply when making disqualification determinations. Appellant points out that "non-convictions" are not listed under section 245C.14, subdivision 1(1), of the BSA and argues that, although section 245C.15 references dismissals, "one has to assume that the dismissal derived from a conviction or plea of guilt and not an individual who has a non-conviction." Minn. Stat. § 245C.14, subd. 1(1) (2012); Minn. Stat. § 245C.15 (2012). But appellant did not raise any statutory interpretation arguments at the district court and is barred from bringing one for the first time on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Moreover, appellant's argument ignores the clear language of section 245C.14, subdivision 1(a)(2), which permits disqualification if "a preponderance of the evidence indicates the individual has committed an act or acts that meet the definition of any of the crimes listed in section 245C.15." Minn. Stat.

5

§ 245C.14, subd. 1(a)(2) (2012).  Assault in the second degree is a crime listed under section 245C.15.  Minn. Stat. § 245C.15, subd. 1 (2012).

Second, appellant argues that the evidence DHS relied on when making the disqualification determination—namely, the police report detailing the second-degree assault charge—was insufficient to rise to the level of a preponderance of the evidence.  This argument mischaracterizes the issue on appeal.  The crucial issue before this court is whether the district court abused its discretion when it determined that DHS had overcome the statutory presumption favoring expungement by providing clear and convincing evidence that "the interests of the public and public safety outweigh the disadvantages to the petitioner of not sealing the record."  Minn. Stat. § 609A.03, subd. 5(b) (2012).  Challenges to the preponderance-of-the-evidence determination are more apt for the reconsideration process laid out in Minnesota Statutes § 245C.21 (2012).  Under that process, a disqualified individual may request reconsideration within 30 days of a disqualification decision.  Minn. Stat. § 245C.21, subd. 2 (2012).[3]  If reconsideration is denied, a person who has been permanently disqualified based on a preponderance of the evidence, rather than a conviction, has the right to a fair hearing.  Minn. Stat. § 245C.27, subd, 1(a) (2012); *see also* Minn. Stat. § 256.045, subd. 3(a)(10) (2012).  An aggrieved party may seek review of the fair hearing determination through a writ of certiorari to this court.  Minn. Stat. §§ 480A.06, subd. 3, 606.01 (2012).  At that point,

---

[3] Under certain circumstances, DHS may set aside a disqualification, but this does not apply to those permanently disqualified pursuant to section 245C.15, subdivision 1. Minn. Stat. § 245C.24, subd. 2 (2012).  Appellant was permanently disqualified because second-degree assault is listed under section 245C.15, subdivision 1.

this court would review the quasi-judicial agency decision for "questions affecting the jurisdiction of the [agency], the regularity of its proceedings, and, as to the merits of the controversy, whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it." *Anderson v. Comm'r of Health*, 811 N.W.2d 162, 165 (Minn. App. 2012), *review denied* (Minn. Apr. 17, 2012). Appellant's challenges to DHS's initial disqualification decision are more appropriately handled at that stage.

Third, appellant makes a general due-process argument based on the Fifth Amendment. As required by section 245C.17, DHS notified appellant of her disqualification and informed her about the reconsideration process. Minn. Stat. § 245C.17 (2012). While the letter was originally sent to the wrong address, DHS corrected its mistake as soon as it learned of it and allowed the 30-day deadline to begin once the letter was delivered to the correct address. Appellant contends that this mistake should rescind the disqualification based on section 245C.22, subdivision 2, which states that "[t]he commissioner shall rescind the disqualification if the commissioner finds that the information relied upon to disqualify the subject is incorrect." Minn. Stat. § 245C.22, subd.2 (2012). Because nothing in the record indicates that the disqualification decision was based upon the mistake in appellant's home address, it is unclear how her due-process rights have been violated.

Finally, appellant argues that DHS violated the constitutional prohibition against double jeopardy because DHS does not have the authority to retry appellant for offenses for which she was deemed innocent. The Double Jeopardy Clauses of the United States

and Minnesota Constitutions operate to protect a criminal defendant from (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple criminal punishments for the same offense. *State v. Humes*, 581 N.W.2d 317, 320 (Minn. 1998). The Double Jeopardy Clause protects "only against imposition of multiple *criminal* punishments for the same offense." *Id.* (emphasis in original). Because DHS has not imposed additional criminal punishments, appellant's double jeopardy argument is unavailing.

## II.     The district court's determination

As previously noted, appellant, who appears pro se, does not explicitly argue that the district court abused its discretion when it denied her expungement request. Despite appellant's oversight, this court will address whether an abuse of discretion occurred. *See State v. Hannuksela*, 452 N.W.2d 668, 673 n.7 (Minn. 1990) ("[I]t is the responsibility of appellate courts to decide cases in accordance with law, and that responsibility is not to be diluted by counsel's oversights, lack of research, failure to specify issues or to cite relevant authorities.") (quotation omitted). In doing so, this court asks whether the district court abused its discretion by ruling that DHS had presented evidence sufficient to overcome the statutory presumption favoring expungement. *See R.H.B.*, 821 N.W.2d at 821.

The parties do not dispute that appellant's second-degree assault charge was eventually dismissed, thereby entitling appellant to a statutory presumption favoring expungement. *See Ambaye*, 616 N.W.2d at 257. In *State v. R.H.B.*, the supreme court clarified that the presumption can only be overcome if the party opposing expungement

8

"establishes by clear and convincing evidence" that it met its burden of persuasion. 821 N.W.2d at 820-22; Minn. Stat. § 609A.03, subd. 5(b). In *R.H.B.*, the court held that the state failed to meet its burden of persuasion because the three affidavits it submitted presented "little more than generalities explaining why it is beneficial . . . to maintain the criminal records of an acquitted defendant." 821 N.W.2d at 822. The court referred to such statements as "unremarkable and generalized, and could be submitted in nearly every expungement case." *Id.* Finally, the court analyzed the specific disadvantages to the petitioner, noting that "inherent disadvantages" are suffered by any expungement petitioner. *Id.* at 824.

Here, DHS presented minimal evidence to the district court. DHS argued that refusing to seal the records would benefit public safety because "[d]efendant was charged with assaultive behavior. Defendant works with vulnerable populations, and she has indicated that she wishes to continue to do so. Accordingly, the balancing test clearly weighs in favor of denying Defendant's petition." At the expungement hearing, DHS argued that because appellant could potentially request reconsideration in the future, DHS would need access to the records in order to carry out that administrative proceeding. In support of these two arguments, DHS submitted only one exhibit: the original letter notifying appellant that she had been disqualified. DHS makes the same arguments on appeal.

DHS's arguments are mere generalities. When faced with a statutory presumption favoring expungement, DHS is burdened with providing clear and convincing evidence showing that keeping the records unsealed would benefit the public such that the burden

9

on the petitioner would be outweighed. For example, DHS argues that appellant's simple indication that she wishes to continue her work with vulnerable adults is enough to overcome the burden of persuasion. But such an argument is certainly not enough to constitute clear and convincing evidence sufficient to overcome the statutory presumption favoring expungement. Instead, these statements are of the type that are "unremarkable and generalized, and could be submitted in nearly every expungement case." *R.H.B.*, 821 N.W.2d at 822.

DHS's argument relating to the need for future access to the records is unconvincing. At its core, DHS argues that it might need access to appellant's records in the future. In addition to being circular, this argument once again is unremarkable, generalized, and of the type that could be offered in every expungement case. If allowed to make this type of argument here, then DHS could make a similar argument at every future expungement hearing in which the reconsideration process has not been exhausted. In similar scenarios in the future, the district court would be reduced to rubberstamping DHS opposition to the expungement petition. Because this argument "could be submitted in nearly every expungement case," it is little more than the type of generality that the supreme court warned against. *Id.*

Finally, DHS fails to acknowledge the specific disadvantages to appellant and how the interests of the public and public safety are outweighed by those disadvantages. In *R.H.B.*, the supreme court upheld a decision granting expungement when the only specific disadvantages to the defendant were "inherent disadvantages caused by unproven criminal accusations—such as personal and professional reputational damage." *Id.* at

10

824.  While *R.H.B.* illustrated that "a petitioner is not required to prove specific disadvantages that he or she will suffer if the petition is denied," here, the appellant can in fact point to specific disadvantages—the loss of her job which she had held for the past three years, and the potential loss of future employment in her field.  *Id.*  Because appellant faces both inherent and specific disadvantages, the benefit to the public must be that much more substantial if the balancing test is to weigh in favor of expungement.  As the previous discussion indicates, no such showing was made.

Because the only evidence offered appears to be of the type specifically discredited in *R.H.B.*, the district court abused its discretion when it determined that DHS offered clear and convincing evidence that the benefits to public safety outweigh the burden on appellant.

**Reversed.**