*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1403**

In the Matter of the Welfare of:
N. P. S.

**Filed May 2, 2016
Remanded
Smith, John, Judge***

Lyon County District Court
File Nos. 42-JV-10-31; 42-JV-10-33; 42-JV-10-43

Todd V. Peterson, Todd V. Peterson, P.A., Sauk Rapids, Minnesota (for appellant N.P.S.)

Lori Swanson, Attorney General, Jeffrey Weber Assistant Attorney General, St. Paul, Minnesota; and

Richard Maes, Lyon County Attorney, Nicole A. Springstead, Assistant County Attorney, Marshall, Minnesota (for respondents Commissioner of Human Service and Commissioner of Health)

Considered and decided by Bjorkman, Presiding Judge; Halbrooks, Judge; and Smith, John, Judge.

# UNPUBLISHED OPINION

**SMITH**, John, Judge

We remand the denial of appellant N.P.S.'s petition to expunge his juvenile records held by the Minnesota Department of Health and the Minnesota Department of Human

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Services and his petition to reinstate his firearm rights because the district court did not explain its decision to exclude the respondent departments from its expungement order or its decision not to reinstate N.P.S.'s firearm rights.

**FACTS**

In June 2010, N.P.S. was adjudicated delinquent for three offenses: two counts of theft and one count of burglary in the third degree. According to the district court's expungement order, all three offenses were committed in 2009, when N.P.S. was 16 and 17 years old. The first two offenses, occurring in September and August of 2009, involved forcibly entering concession stands and a press box at two different football fields with several other juveniles and stealing candy, soda, and a microphone. N.P.S. did not personally break into or steal from the concession stands, but he did wait in the car and drove his friends home with the stolen items. The third offense, which occurred in November 2009, also involved other juveniles. N.P.S. and some friends broke into the 4-H building at the Lyon County Fairgrounds and stole items from several recreational vehicles, causing over $9,000 in damage. Following his adjudications, N.P.S. successfully completed his probation and was discharged in September 2011.

According to his petition, N.P.S. sought expungement because his juvenile record prevents him from finding a job in his chosen field of law enforcement. Since his adjudication in 2010, N.P.S. has graduated from high school and started college at Saint John's University, where he has been working toward degrees in psychology and sociology.

2

While at college, N.P.S. worked as a Life Safety Officer. According to the director of the Life Safety program, N.P.S.'s position involves "providing escorts, traffic control, medical emergency response, fire response, general patrol of St. John's 2900 acres including buildings, campus 9-1-1 dispatch, dispatching fire & medical personnel, dispatching law enforcement personnel, [and] special event details." N.P.S. reported in his petition that his position as a Life Safety Officer, together with his own experience in the juvenile system, made him want to pursue a career in law enforcement.

N.P.S.'s attorney asserted that N.P.S. has already been turned down from law-enforcement jobs because of his juvenile record. His attorney also stated that he was denied employment with the Lyon County Sheriff's Department because of his juvenile record and had an offer from the St. Joseph's Police Department rescinded for the same reason.

N.P.S. reported that his alternative career path is health care and that he is considering pursuing a graduate degree in psychology. N.P.S. argues that a career in health care is "currently impossible" because positions involving direct contact with patients require background checks through the department of human services, which he cannot pass unless his record is expunged.

In addition to expungement of his juvenile records, N.P.S. petitioned to restore his right to "possess, receive, ship or transport, or otherwise deal with, firearms and ammunition." N.P.S. argued that he had good cause to restore his firearm rights because there were no firearms involved in the underlying offense, he was not subject to physical confinement as a result of his adjudication, and because he wants to pursue a career in law enforcement, which would require him to possess a firearm. N.P.S. also noted that he was

3

an "avid hunter" prior to his adjudication and that he wants to be able to hunt with the hunting dog that he and his father trained together.

The county attorney, who prosecuted N.P.S.'s underlying offenses, did not object to N.P.S.'s petition for expungement. The county attorney sent letters to all of the victims of the underlying offenses, one of whom came to the hearing to observe, but none of whom objected. Respondents department of human services and the department of health, however, filed a joint memorandum opposing N.P.S.'s petition. The departments argued that they must have access to N.P.S.'s juvenile record in order to fulfill their statutory protective mandate to evaluate the risk presented by persons applying to work with vulnerable populations.

The district court granted N.P.S.'s petition for expungement as it related to the records held by the following agencies: the district court, the Lyon County Sheriff, the Bureau of Criminal Apprehension, the Marshall Police Department, the Lyon County Attorney, the Minnesota Attorney General, the Probation/Court Services Department, and the Board of Teaching. The district court did not grant N.P.S.'s petition for expungement of the records held by the department of health and the department of human services. The district court did not explain why the two agencies were differently situated than the others, but it made a conclusion of law that the "expungement of *certain* records would yield a benefit to the Juvenile that outweighs the detriment to the public and public safety." (Emphasis added.) The district court also concluded that N.P.S. had not established good cause to restore his firearm rights. N.P.S. appeals.

**D E C I S I O N**

## I.      Expungement

N.P.S. argues that the district court erred by denying his petition to expunge the records held by the department of health and the department of human services. Specifically, he argues that the district court did not articulate any principled reason to grant his request as to the other agencies named in his petition and exclude the department of health and the department of human services. We agree that the district court did not make any findings of fact or conclusions of law to explain why these two agencies were excluded from the expungement order.

We review a district court's order granting or denying expungement for an abuse of discretion. *State v. Ambaye,* 616 N.W.2d 256, 261 (Minn. 2000). Therefore, "we will not overrule the district court unless the court exercised its discretion in an arbitrary or capricious manner or based its ruling on an erroneous interpretation of the law." *State v. R.H.B.,* 821 N.W.2d 817, 822 (Minn. 2012). "We may also reverse the district court if its ruling is against the facts in the record." *Id.* (quotation omitted).

The recently revised statute governing expungement of juvenile-delinquency records requires a district court to determine whether the benefit of expungement to the petitioner outweighs the detriment of expungement to the public and public safety. Minn. Stat. § 260B.198, subd. 6(a) (2014). In making this determination, the statute instructs the district court to consider:

> (1) the age, education, experience, and background, including mental and emotional development, of the subject of the record at the time of commission of the offense;

(2) the circumstances and nature and severity of the offense, including any aggravating or mitigating factors in the commission of the offense;

(3) victim and community impact, including age and vulnerability of the victim;

(4) the level of participation of the subject of the record in the planning and carrying out of the offense, including familial or peer influence in the commission of the offense;

(5) the juvenile delinquency and criminal history of the subject of the record;

(6) the programming history of the subject of the record, including child welfare, school and community-based, and probation interventions, and the subject's willingness to participate meaningfully in programming, probation, or both;

(7) any other aggravating or mitigating circumstance bearing on the culpability or potential for rehabilitation of the subject of the record; and

(8) the benefit that expungement would yield to the subject of the record in pursuing education, employment, housing, or other necessities.

Minn. Stat. § 260B.198, subd. 6(b)(1)-(8) (2014) (emphasis added). The district court must make findings of fact concerning these statutory factors. *In re Welfare of J.T.L.*, 875 N.W.2d 334, 335, 338 (Minn. App. 2015).

The statutory balancing test "weighs the petitioner's interest in pursuing education, employment, or housing without barriers imposed by delinquency-adjudication records, against the public's interest in accessing those records to evaluate the potential public safety risk posed by the petitioner." *In re Welfare of J.J.P.*, 831 N.W.2d 260, 270 (Minn. 2013). The burden is on the petitioner to prove by a preponderance of the evidence that the benefit of expungement outweighs the detriment to the public. *Id.*

Here, the district court made findings regarding all eight statutory factors, after which it concluded that "expungement of the Juvenile's record would yield a benefit to the Juvenile

6

that outweighs the detriment to the public and public safety in sealing the record of the specified agencies, and the burden on the court and the public agencies or jurisdictions in issuing, enforcing, and monitoring the order." The district court did not explain why the statutory factors favored expungement of the other agencies' records, but not those held by the department of health or the department of health and human services. Because we need these findings to facilitate effective appellate review, we remand for further findings. *See In re Civil Commitment of Spicer*, 853 N.W.2d 803, 813 (Minn. App. 2014) (reversing and remanding to the district court when the findings of fact were not "sufficiently particular to permit meaningful appellate review").

## II. Firearm Rights

N.P.S. also argues that the district court erred in denying his petition to reinstate his firearm rights. Again, we remand for further findings.

N.P.S. argues that "the same factors and analysis supporting expungement of N.P.S.'s juvenile records supports the restoration of his firearm rights." N.P.S. notes that the underlying offenses were only property offenses that did not involve firearms or violence and that no victims were present when the offense was committed. N.P.S. also argues that his success as a Life Safety Officer demonstrates his "trustworthiness and honesty" and that he does not pose a public-safety risk. N.P.S. further argues that he would benefit significantly by having his firearm rights restored because he could pursue a career in law enforcement and resume his hobby of hunting with his family, which he argues would provide "positive influences and experiences in his life."

7

Minnesota law provides that a court may restore a petitioner's firearm rights if he or she "shows good cause to do so and the person has been released from physical confinement." Minn. Stat. § 609.165, subd. 1d (2014). This court has defined "good cause" as "a reason for taking an action that, in legal terms, is legally sufficient, and, in ordinary terms, is justified in the context of surrounding circumstances." *Averbeck v. State*, 791 N.W.2d 559, 561 (Minn. App. 2010). We also concluded that when a district court examines the "context of surrounding circumstances," public safety is of paramount concern and, to show good cause, a petitioner's private interest in restoring his firearm rights must outweigh the public safety interest. *Id.*

Whether the petitioner has shown good cause is a mixed question of law and fact. *Id.* at 560–61. We review the district court's conclusions of law de novo and its factual findings for clear error. *Id.* But even when a petitioner shows good cause, the district court retains the discretion to grant or deny the petition. *Id.* at 561; *see also* Minn. Stat. § 609.165, subd. 1d ("The [district] court *may* grant the relief sought if the person shows good cause to do so…" (Emphasis added.)); Minn. Stat. § 645.44, subd. 15 (2014) ("'May' is permissive."). We review the district court's decision for an abuse of discretion. *Averbeck*, 791 N.W.2d at 561.

Because of the deferential standard of review, N.P.S. has a heavy burden to carry to overturn the district court's determination that he did not present good cause to restore his firearm rights. Again, however, the district court did not adequately explain its decision. The district court found that N.P.S. was adjudicated of a crime of violence under Minn. Stat. § 609.165, which limits firearm rights for persons convicted or adjudicated of crimes

so defined. The district court also noted that he was not subject to physical confinement and was successfully discharged from probation, that the offense did not involve firearms or result in physical injury to any person, and that N.P.S. expressed an interest in a career in law enforcement and in hunting. After making those findings, but without further analysis, the district court concluded that N.P.S. did not show good cause to restore his firearm rights at the time of the petition. This court expresses no opinion regarding the merits of N.P.S.'s claims. Without further findings, however, we are precluded from meaningful appellate review.

Because we cannot fully review the district court's order, we remand for further findings regarding (1) whether the benefit of expungement to N.P.S. outweighs the detriment of expungement to the public and public safety, specifically as to the records held by the department of health and the department of human services, and (2) whether N.P.S. has shown good cause to restore his firearm rights, based on an evaluation of whether his private interest in having his firearm rights reinstated is outweighed by public safety concerns.

**Remanded.**