*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0776**

State of Minnesota,
Respondent,

vs.

A. K. N.,
Appellant.

**Filed December 27, 2016
Affirmed
Larkin, Judge**

Wright County District Court
File No. 86-CR-13-3607

Lori Swanson, Attorney General, Dominic J. Haik, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Stephen V. Grigsby, Minneapolis, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Hooten, Judge; and Smith, Tracy M., Judge.

## U N P U B L I S H E D   O P I N I O N

**LARKIN**, Judge

Appellant challenges the district court's refusal to expunge records held by the

Minnesota Department of Human Services (DHS) and the Minnesota Department of Health

(MDH). Appellant argues that the district court did not make sufficiently individualized findings and in effect exempted the DHS and the MDH from application of the expungement statute. We affirm.

**FACTS**

The State of Minnesota charged appellant A.K.N. with malicious punishment of a child and domestic assault, based on an incident that occurred on July 13, 2013. The state alleged that A.K.N. struck her 13-year-old son multiple times with a belt and also struck her husband when he attempted to intervene. An officer who responded to the disturbance reported that A.K.N.'s son had red marks on his arm and welts with bruising on his legs. The officer also reported that A.K.N.'s husband had swollen red marks on his back consistent with being struck with a belt.

A.K.N. pleaded guilty to gross misdemeanor malicious punishment of a child, and the state dismissed the domestic-assault charge. The district court stayed adjudication of guilt and placed A.K.N. on supervised probation for one year. On October 6, 2014, the district court discharged A.K.N. from probation and dismissed the malicious-punishment charge.

The DHS conducts background studies regarding individuals who provide direct care to patients of programs supervised by the DHS and the MDH. *See* Minn. Stat. § 144.057, subd. 1 (Supp. 2015) (providing that DHS conducts background checks for MDH); Minn. Stat. § 245C.03, subd. 2 (Supp. 2015) (requiring the DHS to conduct background studies on personal-care-assistance programs under Minn. Stat. § 256B.0659 (2014)). If the DHS determines that an individual is disqualified from providing direct

2

patient care, the individual may request reconsideration from the MDH. Minn. Stat. § 144.057, subds. 2-3 (2014); *see also* Minn. Stat. § 245C.21 (2014) (procedure for requesting a reconsideration).

The DHS disqualified A.K.N. from serving as a personal-care attendant for her daughter based on the incident involving her son and then husband. In December 2015, A.K.N. petitioned the district court to expunge the dismissed charges. The DHS and the MDH objected. The DHS and the MDH argued that they need access to A.K.N.'s records for the purpose of evaluating the risk she would pose if employed in direct-care positions, such as a personal-care attendant. The district court granted A.K.N.'s petition in part. However, the district court concluded that in "order to balance [A.K.N.'s] desire for expungement, and the agencies' concerns for public safety, . . . DHS and MDH should be excluded from this Expungement Order." This appeal follows.

## DECISION

A.K.N. contends that the district court erred by denying expungement of her records with the DHS and the MDH. A.K.N. sought expungement under Minn. Stat. § 609A.02, subd. 3(a)(2) (2014), which provides that a person may petition for expungement of a criminal record if the "petitioner has successfully completed . . . [a] stay of adjudication and has not been charged with a new crime for at least one year since completion of the . . . stay of adjudication." The district court shall grant petitions under that section "unless the agency or jurisdiction whose records would be affected establishes by clear and convincing evidence that the interests of the public and public safety outweigh the disadvantages to the petitioner of not sealing the record." Minn. Stat. § 609A.03, subd. 5(b) (2014). In

3

making that determination, the district court must consider 12 factors, including "the risk, if any, the petitioner poses to individuals or society," "the length of time since the crime occurred," "the reasons for expungement," and "other factors deemed relevant by the court." *Id.*, subd. 5(c) (2014).

We review a district court's decision regarding whether to expunge criminal records for an abuse of discretion. *State v. M.D.T.*, 831 N.W.2d 276, 279 (Minn. 2013). Appellate courts "will not overrule the district court unless the court exercised its discretion in an arbitrary or capricious manner or based its ruling on an erroneous interpretation of the law." *State v. R.H.B.*, 821 N.W.2d 817, 822 (Minn. 2012). Appellate courts "may also reverse the district court if its ruling is against the facts in the record." *Id.* (quotation omitted).

The district court refused to expunge A.K.N.'s records with the DHS and the MDH because "[t]he knowledge of [A.K.N.'s] criminal background is essential in making a determination as to whether [A.K.N.] is fit to provide assistance to vulnerable populations." The district court reasoned, "Knowledge of [A.K.N.'s] conviction goes directly to the [DHS and MDH's] ability to protect the public." The district court noted that "[o]ne of the victims was a minor," that the incident involved physical force and "occurred only a few short years ago," and that the limitations on the expungement requested by the DHS and the MDH would "impact[] a small portion of employment opportunities" because other "employment agencies will not have access to these records."

A.K.N. argues that the district court "improperly took into account facts with regard to a charge that was dismissed and failed to make sufficiently individualized findings . . . and in effect exempted the DHS and MDH from the application of the expungement law."

4

This argument raises an issue that is similar to one presented in *State v. R.H.B.*, 821 N.W.2d at 817. In *R.H.B.*, the Minnesota Supreme Court held that a state agency opposing expungement must do more than present generalities; the agency must present evidence of unique or particularized harm. *Id.* at 822-23. R.H.B. sought expungement under Minn. Stat. § 609A.02 (2010). *Id.* at 820-21. The statute authorized an individual to petition the district court "to seal all records relating to an arrest, indictment or information, trial, or verdict if all pending actions or proceedings were resolved in favor of the petitioner."[1] *Id.* at 820 (quotation omitted).

R.H.B. had been acquitted of assault charges and asked the district court to seal records regarding the charges. *Id.* at 819. The Minnesota Supreme Court summarized the state's evidence in opposition to expungement as follows:

> Here, the State presented three affidavits to support its argument that sealing R.H.B.'s criminal record would threaten public safety. Two affiants from the Wright County DHS said that open criminal records help the agency to "streamlin[e] investigations" about past criminal activities and may help to demonstrate a history or pattern of misconduct. And a detective from a municipal police department in Wright County stated that open criminal records give investigating officers "more tools," "assist[ ] them in conducting their investigation," "show potential gaps in their investigations," and "help[ ] [them] when they are questioning a suspect."

*Id.* at 822.

---

[1] In 2014, the Minnesota Legislature amended this statute to grant petitioners who successfully completed a stay of adjudication the same option for expungement as petitioners who had all pending actions or proceedings resolved in their favor. 2014 Minn. Laws ch. 246, § 6, at 811-12.

The Minnesota Supreme Court held that the district court did not abuse its discretion by granting expungement because the state presented evidence that was "unremarkable and generalized, and could be submitted in nearly every expungement case." *Id.* at 822-23. The supreme court noted that the affiants stated reasons to maintain "*a Defendant's* criminal arrest record, rather than why it is in the public's interest to maintain [the petitioner's] criminal record" and that "the State presented almost no evidence that sealing [the petitioner's] criminal record would present a unique or particularized harm to the public." *Id.* at 823.

In this case, the DHS and the MDH emphasized that A.K.N. struck her child and husband multiple times with a belt. The departments argued that removing their access to records regarding that incident would undermine their ability to disqualify A.K.N. from working with children and adults who are vulnerable to abuse. They also argued that the incident occurred recently and that A.K.N. had not presented evidence of rehabilitation.

Unlike the circumstances in *R.H.B.*, where the state presented generalized evidence that could apply in nearly every expungement case, the DHS and the MDH relied on facts showing a unique or particularized harm to the public. The DHS and the MDH argued that given the specific circumstances of A.K.N.'s case, expungement would undermine the departments' ability to disqualify A.K.N. from positions that provide direct care to vulnerable individuals, placing those individuals at risk of harm.

The district court made several findings to support its decision to limit the scope of its expungement order. First, the district court found that A.K.N.'s "criminal background, especially in regards to the abuse and malicious punishment convictions, are imperative to

6

[the DHS and MDH's] determination of whether [A.K.N.] is fit to provide services to vulnerable individuals." The district court noted that the relevant records documented A.K.N.'s use of physical force against a minor child. This finding addressed factors that the court must consider, such as "the nature and severity of the underlying crime" and "the risk, if any, the petitioner poses to individuals or society." Minn. Stat. § 609A.03, subd. 5(c) (2014). A.K.N. argues that the district court failed to consider the facts specific to her case. However, the district court specifically found that A.K.N. used "physical force to discipline her son, and used physical force against her husband."

Second, the district court found that only a few years had passed since A.K.N. committed the offense. A.K.N. argues that the district court did not adequately explain why not enough time had passed since the incident. A.K.N. argues that enough time has passed to justify expungement as soon as an individual is eligible to request expungement under the statute.

"If the Legislature's intent is clear from the statute's plain and unambiguous language, then we interpret the statute according to its plain meaning . . . ." *State v. Rick*, 835 N.W.2d 478, 482 (Minn. 2013). On one hand, the expungement statute establishes that a person may seek expungement one year after completion of a stay of adjudication. Minn. Stat. § 609A.02, subd. 3(a)(2). On the other hand, the statute includes "the length of time since the crime occurred" among the factors the district court shall consider when determining whether to deny expungement based on an objection. Minn. Stat. § 609A.03, subd. 5(c). Under the plain language of the statute, if there is an objection to expungement, satisfaction of the one-year requirement for petitioning does not necessarily establish that

7

enough time has passed between the offense and the request for expungement.  Given the particular circumstances of this case, we cannot say that the district court erred in reasoning that not enough time had passed since A.K.N.'s offense to tip the relevant balance in her favor.

Third, the district court noted that A.K.N. sought expungement for the purpose of becoming her daughter's personal-care attendant.  The DHS and the MDH opposed expungement because they consider an applicant's criminal history when determining whether the applicant should qualify as a personal-care attendant.  The district court balanced the public interest in protecting vulnerable individuals from abuse against A.K.N.'s interest in working as her daughter's personal-care attendant and determined the balance in favor of the public.  The decision was neither arbitrary nor capricious, especially where the district court denied expungement only with respect to the DHS and the MDH.

In sum, the DHS and the MDH presented evidence showing that a particular harm could result if A.K.N.'s expungement petition were granted as to those departments, and the district court narrowly tailored its denial of expungement to prevent that harm.  In doing so, the district court did not exempt the DHS and the MDH from the expungement statute.  Instead, it based the denial on the particular facts of this case.  The district court properly applied the expungement law, and its ruling is not against the facts in the record.  Because the district court did not abuse its discretion by refusing to seal A.K.N.'s records with the DHS and the MDH, we affirm.

**Affirmed.**