*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1938**

In the Matter of the Child of: C. A. L. and R. C. R., Parents

**Filed April 20, 2015
Affirmed
Larkin, Judge**

Hennepin County District Court
File No. 27-JV-12-11235

Wright S. Walling, Brandon M. Zumwalt, Walling, Berg & Debele, P.A., Minneapolis, Minnesota (for appellants)

Michael O. Freeman, Hennepin County Attorney, Nancy K. Jones, Assistant County Attorney, Minneapolis, Minnesota (for respondent Hennepin County Human Services and Public Health Department)

Jonathan G. Steinberg, Chrastil and Steinberg, PLLP, Minneapolis, Minnesota (for guardian ad litem Sally Thomas)

Considered and decided by Larkin, Presiding Judge; Rodenberg, Judge; and Klaphake, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellants challenge the district court's denial of their motion for adoptive-placement under Minn. Stat. § 260C.607 (2014), arguing that the district court erred by failing to apply the rules of adoption procedure, denying their request for depositions, and concluding that they did not meet their burden of proof. We affirm.

## FACTS

On June 26, 2012, six-week-old P.R. was admitted to a hospital with serious injuries, including multiple rib fractures, a skull fracture, various bruises and swelling, and a subdural hematoma. Some of his injuries were up to three weeks old. A child-abuse pediatrician evaluated P.R.'s injuries and concluded, without doubt, that P.R. had been physically abused. At that time, P.R. and his parents resided in the home of appellants, who are P.R.'s paternal grandparents. On July 2, respondent Hennepin County Human Services and Public Health Department (the agency) filed a petition in district court alleging that P.R. was a child in need of protection or services (CHIPS). On December 18, the agency petitioned to terminate the parental rights of P.R.'s parents.

In April 2013, P.R.'s parents voluntarily terminated their parental rights, and the district court appointed the Commissioner of Human Services as P.R.'s guardian. On June 3, appellants moved for P.R.'s adoptive placement in their home under Minn. Stat. § 260C.607, subd. 6. Specifically, appellants requested an order (1) allowing them to intervene in the adoptive-placement proceeding regarding P.R., (2) finding that the agency did not reasonably consider them for adoptive placement, (3) placing P.R. with

them for adoption, and (4) finding that they made the necessary showing to obtain an evidentiary hearing on their motion. The district court ruled that appellants established a prima facie case warranting an evidentiary hearing and reserved rulings on all other aspects of appellants' motion.

In October, the agency provided notice that P.R.'s current foster parents had executed an adoption-placement agreement regarding P.R.

In November, appellants moved for a ruling that the Minnesota Rules of Adoption Procedure would govern procedure and discovery, and not the Minnesota Rules of Juvenile Protection Procedure. Appellants alternatively requested that, if the district court were to apply the juvenile protection rules, the district court should allow them to take depositions under Minn. R. Juv. Prot. P. 17.04. The district court denied appellants' request for application of the Minnesota Rules of Adoption Procedure and reserved a ruling on their request for depositions pending receipt of additional information regarding the proposed depositions. The district court also directed appellants to complete an adoption home study by December 23. On December 17, appellants filed an adoption home study approving them to adopt P.R.

In January 2014, the parties agreed to a discovery order under Minn. R. Juv. Prot. P. 17. In February, appellants filed a memorandum of law explaining their request to depose P.R.'s guardian ad litem and foster parents. The district court denied appellants' request for depositions.

In June, the supreme court filed an order promulgating amendments to the rules of adoption procedure and juvenile protection procedure. One of the amendments clarified

that discovery for a contested adoptive placement under Minnesota Statutes § 260C.607 is governed by the rules of juvenile protection procedure.

On July 29 and 30, the district court held an evidentiary hearing on appellants' motion for adoptive placement and later denied the motion. This appeal follows.

## DECISION

This appeal stems from a dispute regarding the adoptive placement of a child who was placed under the guardianship of the Commissioner of Humans Services after the termination of the parental rights of both of the child's parents. "The responsible social services agency has exclusive authority to make an adoptive placement of a child under the guardianship of the commissioner." Minn. Stat. § 260C.613, subd. 1(a) (2014). However, a relative may seek adoptive placement under section 260C.607, subd. 6(a), which provides:

> At any time after the district court orders the child under the guardianship of the commissioner of human services, but not later than 30 days after receiving notice . . . that the agency has made an adoptive placement, a relative . . . may file a motion for an order for adoptive placement of a child who is under the guardianship of the commissioner. . . .

The motion must make a prima facie showing that the agency has been unreasonable in failing to make the requested adoptive placement. *Id.*, subd. 6(b). If a prima facie showing is made, the district court must set the matter for an evidentiary hearing. *Id.*, subd. 6(c). At the hearing, the agency must present evidence regarding why it did not place the child with the moving party. *Id.*, subd. 6(d). Next, the moving party has the burden of proving, by a preponderance of the evidence, that the agency was

4

unreasonable in failing to make the requested adoptive placement. *Id.* The statute further provides:

> At the conclusion of the evidentiary hearing, if the court finds that the agency has been unreasonable in failing to make the adoptive placement and that the relative . . . is the most suitable adoptive home to meet the child's needs using the [best-interests] factors in section 260C.212, subdivision 2, paragraph (b), the court may order the responsible social services agency to make an adoptive placement in the home of the relative. . . .

*Id.*, subd. 6(e).

This appeal presents three issues: whether the district court erred by ruling that the Minnesota Rules of Adoption Procedure did not apply to the underlying proceeding, whether the district court erred by denying appellants' request for depositions under the Minnesota Rules of Juvenile Protection Procedure, and whether the district court erred in finding that appellants did not prove that the agency was unreasonable in ruling them out as an adoptive placement. We address each issue in turn.

**I.**

Appellants contend that the district court erred by ruling that the Minnesota Rules of Juvenile Protection Procedure governed discovery in this matter, and not the Minnesota Rules of Adoption Procedure. Appellants argue that the district court's ruling prevented them from taking depositions that would have been allowed under the adoption rules. This court reviews the construction and application of procedural rules de novo. *Eclipse Architectural Grp. v. Lam*, 814 N.W.2d 692, 696 (Minn. 2012).

5

Minn. R. Adopt. P. 1.02 states that "[t]hese rules establish uniform practice and procedure for adoption matters in the juvenile courts of Minnesota." Appellants argue that the evidentiary hearing in this case was prompted by a motion for adoptive placement and that under the definition of "adoption matter" in Minn. R. Adopt. P. 2.01(c), this case "is certainly an adoption matter" and it should have proceeded under the Minnesota Rules of Adoption Procedure. Appellants therefore argue that discovery in this case was governed by Minn. R. Adopt. P. 17.01 and 17.02, which, at the time of the district court's ruling, provided that discovery in adoption matters was governed by the Minnesota Rules of Civil Procedure. Appellants further argue that "[t]he Minnesota Rules of Civil Procedure . . . are extremely different [than the Minnesota Rules of Juvenile Protection Procedure] and allow for depositions to be taken without court involvement."

In response, the agency notes that appellants ignore that "the Minnesota Rules of Adoption Procedure were amended to eliminate any ambiguity that may have existed" regarding whether the adoption or juvenile protection rules govern discovery in a hearing under Minn. Stat. § 260C.607, subd. 6. Minn. R. Adopt. P. 17.02 now states that "discovery for a contested adoptive placement under Minnesota Statutes § 260C.607 is governed by the Rule 17 of the Rules of Juvenile Protection Procedure." The 2014 Advisory Committee Comment explains the amendment as follows:

> Rule 17.02 provides *clarification* that discovery in the case of a contested adoptive placement for a child under the guardianship of the commissioner of human services is governed by the Rules of Juvenile Protection Procedure.

6

. . . .

> Providing that the discovery rule in the Rules of Juvenile Protection Procedure applies to motions challenging adoptive placement decisions of the responsible agency made under Minnesota Statutes Chapter 260C accomplishes two things:
>
> 1. It strikes a balance between the need for expedited decision-making and the child's need for stability with the parties' need to access information, especially when the party has had the ongoing right to raise issues about the agency's placement decision from very early in the proceedings; and
> 2. It continues the Rules of Juvenile Protection Procedure in effect until an adoption petition is filed. This is a bright line that helps avoid confusion about which rules or parts of rules (the Juvenile Protection Rules or Adoption Rules) apply to proceedings up to the point an adoption petition is filed.

Minn. R. Adopt. P. 17.02 2014 advisory comm. note (emphasis added).

As to the timing of the rule change, the order promulgating the amendment states that the amendment is "effective as of on July 1, 2014, and shall apply to all cases pending or commenced on or after the effective date." *Order Promulgating Amendments to the Rules of Juvenile Protection Procedure and the Rules of Adoption Procedure*, No. ADM10-8041 (Minn. June 12, 2014) (order).

In sum, the Minnesota Supreme Court amended the Minnesota Rules of Adoption Procedure to explicitly state that those rules do not govern discovery in a contested adoptive placement under Minn. Stat. § 260C.607 and that such discovery is governed by Minn. R. Juv. Prot. P. 17. Moreover, the advisory comment describes the amendment as a clarification, as opposed to a change. Lastly, the amended rule applies in this appeal,

7

because the case was pending on the effective date of the amendment. We therefore discern no error in the district court's refusal to apply the adoption rules.

**II.**

Appellants next contend that the district court erred by denying their request for depositions under Minn. R. Juv. Prot. P. 17.04. The district court has wide discretion to issue discovery orders, and absent a clear abuse of that discretion, its discovery orders will not be disturbed. *In re Comm'r of Pub. Safety*, 735 N.W.2d 706, 711 (Minn. 2007). Minn. R. Juv. Prot. P. 17.04 provides that the district court may, upon written request of any party, authorize certain discovery methods. The portion of the rule relating to court-ordered depositions provides:

> (2) Order of Court. Following the initial appearance, any party or the county attorney may move the court to order the testimony of any other person or party be taken by deposition upon oral examination, if:
>
> (i) there is a reasonable probability that the witness will be unable to be present or to testify at the hearing or trial because of the witness' existing physical or mental illness, infirmity, or death;
> (ii) the party taking the deposition cannot procure the attendance of the witness at a hearing or trial by a subpoena, order of the court, or other reasonable means[;] or
> (iii) upon a showing that the information sought cannot be obtained by other means.

Minn. R. Juv. Prot. P. 17.04(b)(2).

Before ruling on appellants' motion for depositions under Minn. R. Juv. Prot. P. 17.04, the district court asked appellants to identify who they wanted to depose and the reasons for the depositions. In response, appellants submitted a memorandum of law,

8

requesting to depose P.R.'s guardian ad litem and foster parents. As to the guardian ad litem, appellants stated that "little is known about the Guardian ad Litem and her placement preference in this case." Appellants noted that they had requested a copy of the guardian ad litem's file directly from her and were awaiting receipt of that file. However, appellants expressed concern that the file "may be insufficient to explain her position for supporting the foster parents" and the reports in the file "may not address her underlying reasons and substantiations for favoring placement" with a nonrelative. As to the foster parents, appellants stated they wanted "to seek further information regarding the foster parents' home, ability to provide care and openness to family contact." Appellants stated that "without depositions, [they] will be unable to gather additional information relating to the foster parents, including [the foster parents'] home, occupations, caregiving and criminal history."

Appellants' argument for depositions was as follows:

> Ultimately this is a contested adoption matter . . . . [T]he evidentiary hearing in this matter is the new contested adoption trial. . . . [Appellants] must be allowed under the statute to at least gain further information on the county's proposed adoptive family [(i.e., the foster parents)]. Without said information, [appellants] are unable to provide any independent information to the court about why the county chose the proposed adoptive family that it did.
>
> . . . The [agency] must be reasonable not only in ruling out the [appellants] in this matter, but in a comparative analysis of the proposed adoptive parents. . . . [A]s designed by [Minn. Stat. § 260C.607, subd. 6], this information is to be given to the court in one hearing, so that if the court rules that the [agency] was unreasonable – then it can immediately look to the child's best interests as to who placement should be with. . . . [Minn. Stat. § 260C.607, subd. 6] has designed this

9

evidentiary hearing procedure with the intent to allow the parties to gather all necessary information for both tasks[,] that of the [agency's] reasonableness and that of best interests, and present this to the court. In an effort to provide the court with all it may need in this hearing to do its duty under the statute, and with an eye towards efficiency, [appellants] respectfully request an opportunity to conduct depositions.

(Emphasis omitted.)

In denying appellants' request for depositions, the district court reasoned, in part, that information regarding the guardian ad litem's opinion was available through means other than a deposition. The district court noted that the guardian ad litem would most likely testify at the hearing, appellants had indicated they would obtain the guardian ad litem's file directly from her, and the guardian ad litem had filed reports that were available to appellants. The district court's reasoning is consistent with the standards for granting or denying a motion for depositions under Minn. R. Juv. Prot. P. 17.04(b)(2), and was not an abuse of discretion.

As to appellants' request to depose the foster parents, the district court reasoned that "the evidentiary hearing is solely to determine whether the [agency] acted unreasonably in excluding [appellants] from the adoptive placement proceedings" and that it was therefore "irrelevant to order the depositions of the foster parents at this stage in the case." The district court noted that:

The purpose of the upcoming evidentiary hearing is to determine whether the [agency] acted unreasonably in its decision to exclude [appellants] from the adoptive placement proceedings. The hearing is not a comparison between who would provide better care for the child, but instead, to decide whether the [agency] was unreasonable in ruling out

10

[appellants] as an adoption option. . . . If the court determines unreasonableness then it may be more relevant to take a comparative view of [appellants] with any other potential adoptive placements, including the current foster parents. . . . However, that is not the nature of the evidentiary hearing, and therefore, at this point in the proceedings, allowing [appellants] to depose the foster parents is irrelevant.

The district court concluded that information regarding the foster parents is "irrelevant at this stage and will remain irrelevant unless the court finds the [agency's] decision to eliminate [appellants] from the adoptive placement procedure unreasonable."

The district court clearly communicated its intent to bifurcate the evidentiary hearing under Minn. Stat. § 260C.607, subd. 6. It would first consider and determine whether the agency had been unreasonable in failing to place P.R. with appellants. If the district court determined that the agency acted unreasonably, it would then consider whether appellants were the "most suitable adoptive home to meet the child's needs." Minn. Stat. § 260C.607, subd. 6(e). That approach is consistent with the plain language of the statute. *See* Minn. Stat. § 260C.607, subd. 6(e) (stating the district court is not authorized to order the responsible agency to place the child in the moving party's home unless the district court finds that "the agency has been unreasonable in failing to make the adoptive placement *and* that the relative or child's foster parent is the most suitable adoptive home to meet the child's needs") (emphasis added); *Tuthill v. Tuthill*, 399 N.W.2d 230, 232 (Minn. App. 1987) (stating that, when the moving party failed to show a prerequisite for modifying maintenance, the district court did not need to address other factors in the modification analysis).

11

Given the district court's bifurcated approach and its determination that appellants did not prove that the agency acted unreasonably, information regarding the foster parents' suitability as an adoptive placement was irrelevant and inadmissible.[1] *See* Minn. R. Evid. 402 ("All relevant evidence is admissible . . . .  Evidence which is not relevant is not admissible."); Minn. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); Minn. R. Juv. Prot. P. 3.02, subd. 1 (indicating that, generally, the juvenile court shall admit only evidence that would be admissible in a civil proceeding under the rules of evidence).  Appellants therefore were not prejudiced by the district court's ruling. Thus, the alleged error stemming from the district court's refusal to allow appellants to depose the foster parents does not provide a basis for this court to reverse.  *See Midway Ctr. Assocs. v. Midway Ctr. Inc.*, 306 Minn. 352, 356, 237 N.W.2d 76, 78 (stating that to prevail on appeal, an appellant must show both error and prejudice resulting from the error); *In re Welfare of Children of J.B.*, 698 N.W.2d 160, 171 (Minn. App. 2005) (applying *Midway* in a termination-of-parental-rights case).

**III.**

Lastly, appellants contend that the district court erred in determining that they failed to prove that the agency was unreasonable in ruling them out as an adoptive placement.  The parties disagree regarding the applicable standard of review.  Appellants

---

[1] We note that the district court's order indicates that appellants agreed that testimony and evidence regarding the foster parents was not relevant and would not be admitted at the evidentiary hearing.

12

argue that because the determination ultimately impacts P.R.'s adoptive placement, the decision should be reviewed for an abuse of discretion. *See re K.L.B.*, 759 N.W.2d 409, 412 (Minn. App. 2008) (stating that appellate courts review a district court's decision regarding an adoption petition for an abuse of discretion), *review denied* (Minn. Feb. 25, 2009). A district court "abuse[s] its discretion by making findings unsupported by the evidence or by improperly applying the law." *Silbaugh v. Silbaugh*, 543 N.W.2d 639, 641 (Minn. 1996).

The agency argues that generally, a determination regarding reasonableness is one of fact that should be reviewed for clear error. *See Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn. 1985) (stating that a district court's factual findings are reviewed for clear error). The agency relies on other areas of the law in which reasonableness is treated as a question of fact. *See, e.g.*, *Weaver v. State Farm Ins. Cos.*, 609 N.W.2d 878, 884-85 (Minn. 2000) (reasonableness of insured's refusal to attend an independent medical exam); *Haug v. Comm'r of Pub. Safety*, 473 N.W.2d 900, 902 (Minn. App. 1991) (reasonableness of driver's refusal to take a breath test). The agency's argument is consistent with the language of section 260C.607, subdivision 6(e), which provides that if, "[a]t the conclusion of the evidentiary hearing . . . the court *finds* that the agency has been unreasonable in failing to make the adoptive placement . . . ." (Emphasis added.)

This court has previously held that a summary denial of a motion for adoptive placement under section 260C.607, subdivision 6, is reviewed under the same standards that apply to a dismissal of a motion for custody modification, reasoning that "[a] motion for adoptive placement is analogous to a motion to modify custody." *In re Welfare of*

13

*L.L.P.*, 836 N.W.2d 563, 570 (Minn. App. 2013). But this court has not determined which standard of review applies to the denial of a motion under section 260C.607, subdivision 6, after an evidentiary hearing or, as is the case here, to a post-hearing denial based solely on the moving party's failure to prove that the agency acted unreasonably. We leave the specific identification of the correct standard of review for another day because, as explained below, the record supports the district court's determination regarding reasonableness under either the abuse-of-discretion or clearly erroneous standard of review.

We now turn to appellants' assertion that the agency failed to provide "any reasonable consideration for adoptive placement of P.R. with [a]ppellants." The district court's findings of fact refute that assertion. At the evidentiary hearing, the district court heard testimony from two adoption workers and from appellants, and it received 85 exhibits. The district court made detailed findings of fact based on that evidence. It found that after the termination of parental rights, paternal-grandmother requested adoption assistance from the agency, the agency held a team meeting to consider the circumstances under which P.R. was removed from his parents and decided not to consider appellants for adoption for the following reasons:

> 17.1 [P.R.] was injured on more than one occasion while residing in [appellants'] home.
>
> 17.2 [Appellants] were in the home, had access, and provided care, to [P.R.] on the day he was hospitalized.
>
> 17.3 [The agency] believed it was not in the best interest to place [P.R.] back into the home where the injuries were discovered and may have occurred.

14

17.4 [The agency] would continue to oppose [appellants] for adoption even if the current foster care providers were not placement options.

17.5 [Appellants] were aware of the chemical and mental health issue the parents experienced and still left [P.R.] alone with them.

17.6 The decision to rule out [appellants] was unanimous.

The district court also found that during the initial juvenile-protection proceedings, the agency contacted appellants about foster placement and adoption, but did not consider them further because:

16.1 [Appellants] were part of the child abuse investigation and at the emergency protective care hearing on July 2, 2012, the Court found that "there are no services or efforts available which could allow [P.R.] to safely remain in the home."

16.2 [P.R.] could not be placed in foster care with [appellants] while the parents resided in their home. The mother did not move out until September 2012, and moved back in in March 2013, and the father reported that when he was released from the workhouse in April 2013, he intended to move back with [appellants].

16.3 In the Order for CHIPS Adjudication filed October 16, 2012, the Court found that "[P.R.'s] parent made an explicit request that [the agency] not consider relatives for placement of [P.R.] and the Court found that this was consistent with the best interest of the child and relieved [the agency] of its relative search requirements under Minn. Stat. § 260C.221.

16.4 [Appellant-grandmother] told the kinship worker on October 1, 2012, that she was fine with a non-relative adopting [P.R.] so long as she could maintain a connection with him.

15

16.5   [Appellants] proposed a family friend as an adoption resource at the Family Group Conference on January 9, 2013, not themselves. Their other son, [P.R.'s] uncle, supported the foster parents to adopt [P.R.] so [P.R.] would be in a neutral setting.

16.6   [P.R.]'s mother continued to oppose either maternal or paternal relatives as adoption resources for the child throughout the proceedings.

As to appellants' testimony at the hearing, the district court found that "[appellants] were aware of the parents' chemical and mental health, as well as anger issues yet left them alone with [P.R.]" and that "[appellants] do not accept any responsibility for [P.R.'s] injuries."

As to the reasonableness of the agency's decision not to place P.R. with appellants, the district court found:

The record, overall, supports the reasonableness of [the agency's] decision to not consider [appellants] for adoptive placement of [P.R.] as they failed to provide a safe home environment while [P.R.] resided in their home and failed to respond appropriately when the severe injuries to [P.R.] were discovered.

19.1   [Appellants] had knowledge that the parents had mental health and chemical abuse issues.

19.2   [Appellants] knew that the parents were not mature enough to be parents yet allowed and expected them to be the primary caregivers for [P.R.].

19.3   The father of [P.R.], [appellants'] son, has a history of explosive and violent behavior and there were instances of domestic violence while the parents resided with [appellants].

19.4   The mother was smoking marijuana and the father was using drugs while they resided in [appellants']

16

home. [Appellant-grandmother] believed her son smoked bath salts and that [the biological mother] was bi-polar.

19.5 [P.R.'s] injuries were sustained on more than one occasion during the first six weeks of his life, yet [appellants] were unaware that [P.R.] had any prior injury other than a bruise on his nose, which they believed happened when his father dropped his cell phone.

19.6 The actions of [appellants] during the time [P.R.] resided with them shows a significant lack of awareness and disregard for [P.R.'s] health and wellness.

Appellants do not specifically assign error to any of the district court's findings. Instead, they argue that the record evidence shows that the agency acted unreasonably by relying on "materially false information," by conducting an inadequate investigation, and by failing to give first consideration to appellants, as relatives, for adoptive placement. Appellants made those arguments in district court, and the court's findings imply that the district court rejected them.[2] Appellants seem to expect this court to reweigh the evidence, assess witness credibility, and substitute our assessment of the evidence for the district court's findings. That approach, which resembles a trial de novo, would be improper. *See Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (1988) (stating that it is inappropriate for appellate courts to reweigh the evidence, find facts, or assess credibility on appeal).

We will not make new findings on appeal. And because our review of the record reveals adequate support for the district court's findings that the agency acted reasonably and its implicit rejection of appellants' arguments to the contrary, we do not disturb the

---

[2] Appellants' briefing in this court regarding reasonableness is nearly identical to their posthearing written closing argument in the district court.

findings. *See Wilson v. Moline*, 234 Minn. 174, 182, 47 N.W.2d 865, 870 (1951) (stating that appellate courts need not "discuss and review in detail the evidence for the purpose of demonstrating that it supports the trial court's findings"); *Peterka v. Peterka*, 675 N.W.2d 353, 357-58 (Minn. App. 2004) (applying *Wilson* in a family law appeal).

Having determined that the district court's factual findings are not clearly erroneous, we next consider whether the district court improperly applied the law. Appellants argue that the district court improperly imposed an elevated standard of care on them. They contend that they were excluded from placement solely because P.R.'s injuries occurred in their home. Appellants do not offer legal argument or authority in support of their argument. Instead, they offer a policy argument: "[t]he district court's rationale . . . has a substantial likelihood of creating a chilling effect on multi-generational households. As is the case here, [a]ppellants have been penalized for offering their home . . . due to the fact that the district court has now imposed a higher level of care upon [a]ppellants for [P.R.'s] safety." Appellants' policy-based argument is unavailing because the court of appeals is not a policy-making court. *See Sefkow*, 427 N.W.2d at 210 ("The function of the court of appeals is limited to identifying errors and then correcting them.").

Moreover, appellants' argument grossly oversimplifies the district court's analysis. The district court's order includes a six-page supporting memorandum, which sets forth its reasoning. The district court explained:

> [Appellants] have argued they were not the primary or custodial caregivers and therefore were not responsible for [P.R.'s] well being while [P.R.] was residing in their home.

However, the testimony indicates that [appellants] invited their son, [P.R.'s] mother and [P.R.] into their home based on their concern the parents did not possess the ability to safely parent [P.R.]. [Appellants], apparently, perceived some threat to [P.R.'s] welfare and had some doubts about the ability of the parents to protect [him]. Therefore, [appellants] bear some responsibility for what happened in their home. [Appellants] were aware of their son's temper and of the chemical abuse and mental health issues of both parents. [Appellants] took in [P.R.] and parents because they had concerns, which appear to have been confirmed during the time the parents were in their home, that they (the biological parents) were not able to be responsible parents. [Appellants] provided financial support and at times stepped in to bathe, change and rock the child. They cannot avoid responsibility for the welfare of [P.R.] simply because they were not the "custodial" or "primary" caregivers. *It is reasonable to hold [appellants] to an elevated standard as caregivers*, given they are the child's grandparents, were aware of the biological parents' issues, and offered their home as [a] place of safety where the impact of those issues on the child would be reduced.

(Emphasis added.)

The district court noted that on the day P.R. went to the hospital, appellant-grandmother checked on P.R. after she heard him crying around 6:30 a.m. She observed that P.R.'s father was sleeping by the computer. Appellant-grandmother observed that P.R. was cold, rocked him, and left for work. P.R.'s babysitter arrived at approximately 9:00 a.m., noticed marks on P.R., and notified appellant-grandfather. Appellant-grandfather woke P.R.'s father, who looked at P.R.'s injuries and went back to sleep. Appellant-grandfather called appellant-grandmother and told her about the injuries. Then, appellant-grandfather and the babysitter left the home, leaving P.R. with his sleeping father. The district court acknowledged that appellant-grandmother returned

19

home and took P.R. to the hospital. But the district court noted that appellant-grandfather called appellant-grandmother around 11:15 a.m., but P.R. was not initially seen at the hospital until 3:45 p.m.

The district court also noted that appellants had sufficient opportunity to observe P.R.'s parents' inadequacies while they resided in appellants' home. Appellants suspected that the parents abused chemicals. Appellants witnessed domestic arguments between the parents. The district court noted that P.R. was known to cry for hours and that appellant-grandmother described him as colicky, and yet P.R. "was left with a father who had demonstrated the inability to control his temper and who once punched several holes in the wall during an argument." The district court also noted that the parents' continued presence in appellants' home after P.R.'s removal and appellant-grandfather's testimony that he felt "cut off" from P.R.'s father support the agency's concern that appellants would not limit contact between P.R. and his father, who remained a suspect in the criminal investigation of P.R.'s injuries.[3]

The district court reasoned that

> [t]he question of the reasonableness [of the agency's] decision not to place the child with [appellants] must be examined in the *context* of the circumstances of the infant's first [six] week[s] of life. [Appellants] offered a place to stay and support for [P.R.'s] parents because they had concerns for the parents['] ability to care for themselves and the child. . . .
>
> . . . .

---

[3] Appellants do not assign error to any of the factual statements in the district court's supporting memorandum.

20

> [Appellants], while providing support for the parents and the child and having a reasonable understanding of the problems and shortcomings of the parents did not provide the supervision and protection of the child which their offer of support suggested. The parents and child were not tenants in [appellants'] home but rather family members receiving shelter and support. *[Appellants] voluntarily undertook a greater duty to the child and they failed to fulfill that duty.*

(Emphasis added.)

We discern no error in the district court's reasoning. The district court's references to an "elevated standard" and to appellants' "greater duty" to P.R. were merely a way of describing the particular facts and circumstances of this case, which the district court appropriately considered. The district court wisely assessed the reasonableness of the agency's placement decision by considering all of the circumstances surrounding the child's injury, including circumstances suggesting that appellants assumed some responsibility for P.R.'s safety and did not meet that responsibility. It defies common sense to suggest that the district court should have ignored evidence showing that appellants had some responsibility to ensure P.R.'s safety in their home and failed to do so. Although section 260C.607, subdivision 6, does not identify factors to be considered when assessing the reasonableness of an agency's placement decision, the extent to which the proposed adoptive parent has had responsibility for the child's care and safety and whether that person met the child's needs seem to be obvious considerations. We therefore conclude that the district court did not impose an improper legal standard.

Near the end of their brief, appellants note that "[t]he district court's determination that [they] were rightly excluded from consideration is a decision made without any

21

attempt to examine the best interest factors of the minor child." Appellants ask us to remand the case "so the district court can make a well-rounded, fact-based decision regarding [P.R.'s] best interests." It is not clear whether appellants' best-interests discussion is an attempt to assign error to the district court's application of section 260C.607, subdivision 6, or merely to set forth their requested remedy in the event that we find reversible error on other grounds. Appellants' brief seems to recognize that although section 260C.607, subdivision 6(e), requires that the district court determine the most suitable adoptive home for the child, using statutory best-interests factors, that requirement was not triggered because the district court did not find that the agency unreasonably failed to place P.R. with appellants. *See* Minn. Stat. § 260C.607, subd. 6(e) (requiring consideration of the child's best interests "*if* the court finds that the agency has been unreasonable in failing to make the adoptive placement") (emphasis added). We therefore construe appellants' best-interests discussion as a request for a remedy and conclude that because they have not shown reversible error, we need not discuss it further.

In conclusion, we remind appellants that error on appeal is never presumed; "[i]t must be made to appear affirmatively before there can be reversal" and "the burden of showing error rests upon the one who relies upon it." *Loth v. Loth*, 227 Minn. 387, 392, 35 N.W.2d 542, 546 (1949) (quotation omitted). Appellants have not shown that the district court erred in determining that they failed to meet their burden of proof under section 260C.607, subdivision 6(d). We therefore affirm.

**Affirmed.**