## A. J. WILSON v. CLINTON MOLINE.[1]

May 11, 1951.

No. 35,379.

[1]Reported in 47 N. W. (2d) 865.

See, Wilson v. Moline, 229 Minn. 164, 38 N. W. (2d) 201.

*Leslie S. High,* for appellant.

*Robert B. Gillespie* and *William E. MacGregor,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

This appeal brings before us for the second time the action for an accounting of profits derived from a partnership formed to raise turkeys during 1945 near Isanti, Minnesota. In the first trial, the court concluded that plaintiff had been overpaid in the sum of $198.50, and an appeal was taken from the order denying plaintiff's motion for a new trial. This order was reversed and a new trial granted "consistent with the rules set forth in this opinion." Wilson v. Moline, 229 Minn. 164, 178, 38 N. W. (2d) 201, 209. Subsequently, the new trial was had before the same court, and this resulted in a judgment in favor of defendant of $196.47, together with his costs and disbursements. Appeal is now taken from that judgment. For a statement of the facts, we refer to the report of the case on the prior appeal, and these will be supplemented from the record here insofar as necessary.

By way of review, it appears from the findings in the second trial that plaintiff is defendant's uncle by marriage; that prior to 1945 plaintiff, a former summer resort owner, had not raised turkeys on a commercial scale, but that defendant had had some experience in raising them in southern Minnesota and in the neighborhood of Isanti and in 1944 had purchased a farm near the latter place with the intention of raising turkeys on the farm in 1945; that early in 1945 the parties made an oral agreement to raise turkeys on the farm that year; and that by the terms of the agreement plaintiff was to advance $5,000 toward the project and was to devote his entire time and efforts to the project, for which he was to receive $130 a month. In addition, plaintiff was to be refunded his $5,000 from the proceeds of the sale of the turkeys and was to receive one-fourth of the net profits from the sale of turkeys raised on the farm in 1945. Defendant was to furnish the farm and arrange for financing the project. He was also to furnish his experience and

supervise the venture. The court further found that plaintiff got a return of his $5,000 advance, received $130 per month for his services during the time he spent on the project, had living quarters for himself and his wife in a dwelling house located on the farm, and received $2,378.86 from the proceeds of the sale of the turkeys as his share of the profits for 1945 before any controversy arose with respect to the accounting. The court made comprehensive findings in connection with the matters considered, including some of the problems involved in the project, and concluded that defendant was entitled to judgment for $196.47, with costs and disbursements, and ordered judgment accordingly.

Plaintiff has made numerous assignments of error, 42 in number, the substance of which is to dispute the following amounts allowed by the trial court as chargeable to the partnership:

| | |
|---|---:|
| Feed, grit, and seed | $39,744.60 |
| Labor | 3,463.67 |
| Gasoline, supplies, etc. | 2,685.73 |
| Interest | 852.66 |

It is plaintiff's position on this appeal that defendant has failed to make proof of his claims for credit as required by the opinion of this court (Wilson v. Moline, 229 Minn. 164, 38 N. W. [2d] 201); therefore, that the items must be disallowed *in toto* or plaintiff's figures accepted therefor. The main dispute centers around the amount allowed by the trial court as a credit for feed. Plaintiff construes the opinion of this court on the prior appeal as precluding defendant from claiming any credit for the feed item until and unless he can show records that the birds actually consumed the feed, the price of which is claimed as a credit. The assignment of error relative thereto is as follows:

"Trial court erred in failing to find as facts:

" 'Defendant has presented no evidence, acceptable as evidence in this partnership accounting, to establish that any of the numerous items charged for feed by defendant were actually delivered to and consumed by the turkeys raised by this partnership, or of the cost

or reasonable value of any item, and the entire claim of defendant for feed totaling $39,744.60 must be disallowed.' "

He further claims that the opinion of this court precluded the trial court from admitting the testimony of experts offered by defendant who testified as hereinafter noted. We cannot agree with this contention. It is obvious that the turkeys in question did not attain maturity and weight on forage alone, since the court found that on the particular farm involved the forage was very poor because of the light, sandy soil and the weather conditions in 1945. On the first appeal, we said that the burden of proof was on defendant, as trustee, to show that he was entitled to the credits he claimed for the feed sold by his personal feed business to the partnership; that defendant's failure to keep accounts and vouchers should work to his disadvantage and, ultimately, in failure to establish the credits he claimed, and not to the disadvantage of the claimant, who did not keep the books and had no access to them. The burden of proving the accuracy of the accounts falls on the partner who has kept the records, once a breach of good faith is shown. Wilson v. Moline, 229 Minn. 164, 38 N. W. (2d) 201, *supra*. Under such circumstances, any doubts will of course be resolved against the partner who had charge of the books and accounts or the duty of keeping them. See, Wilson v. Moline, 229 Minn. 172, note 8, 38 N. W. (2d) 206, note 7. A reading of the record of the second trial does not satisfy us that such a good-faith breach was shown, nor that plaintiff had no access to the records.

It is not essential for us to determine, as stated in assignment No. 1, whether the trial court erred in admitting in evidence the records of defendant relating to items of feed, for the reason that no proper foundation had been laid for their admission. The trial court had the testimony of three experts to aid it in determining the amount of feed justifiably chargeable against the partnership for feed and, for that matter, in determining the correctness of the charges against the partnership as evidenced by defendant's records. Richard Olson, an experienced turkey raiser and supervisor of tur-

key flocks, visited the farm approximately every three weeks. He testified as to the forage available there, the effect of lack of range on feed consumption, and the feed consumption of birds in view of the condition of the forage. Clement Thurnbeck, likewise an experienced turkey raiser on a farm about 25 miles from the farm in question, testified that his farm was practically identical with the Moline farm as to soil, type, climate, etc., and that he twice visited the Moline farm in 1945. He considered the pasture poor and thought that in view of the conditions on the farm the feed consumption would amount to six and one-half to seven pounds per pound live weight of each bird sold. Howard Welsh, experienced also in the turkey business, was familiar with the Moline farm and the type of turkeys raised thereon. He testified that in view of all the factors, i. e., date of purchase, dates of sale, number and type of birds, mortality rate, average live weight of the birds, and range conditions, the feed consumption would be about six pounds of feed for each pound of live weight per bird. Furthermore, there is undisputed testimony in the record, the assertions of plaintiff to the contrary notwithstanding, that delivery date of the turkeys was delayed about two weeks because the processing plant was loaded to capacity, that the turkeys in question for this reason were not sold until two weeks after maturity, and that after turkeys hit maturity their feed consumption is high in proportion to the weights gained. In this respect also the low mortality rate of the flock was important. These witnesses, apart from any records offered by defendant, support defendant's contentions of a feed consumption which in this operation amounted to about 116 pounds per bird sold. Plaintiff has offered nothing to contradict this evidence or to show that defendant made excessive profits by virtue of the price he charged the partnership for the feed he sold to it. Plaintiff apparently has been content to rely solely upon his expectation that defendant would be unable to meet his burden of producing evidence to the effect that he was entitled to the credits he claimed. The evidence produced amply supports the findings of the trial court in respect to the item of feed, and we cannot disturb it.

Plaintiff next contends that of the amount allowed for labor by the trial court as chargeable to the partnership a very substantial undeterminable amount was performed for defendant on projects which had no connection with the turkey-raising partnership. He assigns as error that the trial court erred in not finding that the claims for labor of Gilbert Backlund, Earl Backlund, Ernest Anderson, and William Krause should be disallowed. We have carefully reviewed all the evidence, and particularly the testimony of Ernest Anderson, the only one of the above workmen to testify, and of plaintiff himself. Anderson's testimony, on cross-examination by plaintiff, corroborates and substantiates the testimony of defendant as to the amount of labor performed by him on the partnership project. It is also worthy of note that there is nothing in the testimony of plaintiff which contradicts any of the testimony with respect to the amount of labor performed by these men on the partnership project, except vague statements on plaintiff's part that Earl Backlund, Clint Moline, and Earl Backlund's brother "worked a while" and "done some" work with him.

Plaintiff, in respect to labor, asserts that the partnership ended on October 31, 1945, the date of the sale of the last turkeys, and that the trial court, in refiguring the items for labor, made additions of payments for labor performed in November and December by Earl Backlund and Ernest Anderson. The partnership agreement provided that it was to be terminated at the close of the turkey-raising season of 1945. We feel that the trial court was justified in including, as a proper and legal charge, the cost of labor necessary to haul in, clean, and store the equipment after marketing the turkeys. That is certainly a necessary incident to the partnership venture. In all other respects, the assignments of error as to labor are unsupported by argument. An assignment of error not argued in the brief, except by mere repetition of the words of the assignment, is deemed abandoned. Kiebach v. Kiebach, 227 Minn. 328, 35 N. W. (2d) 530.

We come then to a consideration of the item of interest allowed by the trial court. Plaintiff makes three separate assignments of error in regard to this: (1) That the trial court erred in admitting in evidence certain exhibits of defendant relating to borrowed funds and interest payments, for the reason that no proper foundation was laid for their admission; (2) that the trial court erred in finding as a fact that in the operation of the business money was necessarily borrowed, upon which interest in the amount of $852.66 was paid; and (3) that the trial court erred in failing to find as a fact that the wrongful conduct of defendant in commingling with his personal account the funds received on notes and using such funds for his personal purposes precluded any claim for interest.

Apart from generalized references to claimed error on the part of the court in allowing the item of $852.66, the only argument advanced in support of these assignments is as follows:

"In refiguring items for interest, a note * * * for $2,500.00, dated March 1, 1945, and paid December 29, 1945, was included * * *. Significantly, Moline Feed Company bank account was opened March 1, 1945, with deposit of $2,500.00, and an item of a check for $2,500.00 was charged against Moline Feed Company account upon December 29, 1945, the day this note was paid * * *. Inspection of bank account of Clinton V. Moline, 'Moline Turkey Farm' account * * * discloses that this note was not paid from that account."

Defendant claimed interest in the sum of $977.66, and the court disallowed $125 of that amount. We find no reversible error in connection with said assignments under the facts and circumstances here. Plaintiff cannot hope, by means of his unsupported assignments, to procure from this court an exhaustive and detailed analysis of the accounts contained in the record in justification of the results reached by the trial court. He makes no claim that interest is not a proper item of expense in a partnership such as this, but only that defendant should be penalized by a disallowance of this item because of his alleged failure to keep proper records. From an examination of the record, we are satisfied that the trial court

did not err in admitting the exhibits relating to the borrowed funds. We regard the evidence as sufficient to warrant this charge to the partnership, particularly in the absence of any showing on the part of plaintiff that the trial court erred in allowing this charge.

The last item of dispute is the amount charged to the partnership on account of gasoline, supplies, etc. Plaintiff assigns as error that the trial court erred in admitting in evidence defendant's exhibits 7 to 7-46, all relating to items for supplies, repairs, etc., claimed as credits, for the reason that no proper foundation had been laid for their admission as a charge in this accounting, and that the trial court erred in finding that in the operation of the partnership the sum of $2,685.73 was necessarily expended for gasoline, medicine, supplies, and miscellaneous expenses. An additional assignment is made that the entire claim of defendant for this amount is based upon the conflicting, vacillating, and often palpably false oral testimony of defendant in an effort to bolster his obviously inadequate and undependable records; therefore, that such claims must be disallowed.

We have given the record much study, although some of the assignments of error deserved none, based as they are on mere assertions. The record reveals that the separate items of expense were supported by invoices or statements of firms supplying the items, together with the cancelled checks of defendant showing payment thereof. Defendant testified that the expenses were necessarily incurred in the operation of the partnership. We regard defendant as having met his burden of producing evidence to verify the accounts. It then became incumbent upon plaintiff to produce evidence showing either that the invoices were false or that the supplies were not used in the operation, as defendant testified. In this latter respect, plaintiff was in as good position as defendant to determine whether the supplies were actually used in the operation, since he was working on the farm during the time the turkeys were being raised. No such showing was made by plaintiff, but, instead, he again relied upon the supposed inability of defendant

to produce proof to substantiate his accounts. We cannot accept the bald statements of plaintiff that defendant charged to the partnership substantially excessive amounts for labor and supplies and that the conclusion is inescapable that defendant financed his other operations primarily from this partnership. The evidence does not warrant such a conclusion.

We have examined the remaining assignments of error, the sole purpose of which seems to be to procure a trial *de novo* in this court. It is not the purpose of the supreme court to decide the facts or to justify the results reached in the trial court. In re Guardianship of Hudson, 220 Minn. 493, 20 N. W. (2d) 330; 1 Dunnell, Dig. & Supp. § 414, and cases cited under note.

The record in this case is a voluminous one, containing over 700 pages of testimony and many exhibits. The trial court made comprehensive findings in the matter. We believe that there is sufficient evidence to support the trial court's findings under the rule that where an action is tried by a court without a jury its findings of fact are entitled to the same weight as the verdict of a jury and will not be reversed on appeal unless they are manifestly and palpably contrary to the evidence. This rule applies whether the appeal is from a judgment, as in the instant case, or from an order granting or denying a new trial, and whether the evidence is oral or documentary. Frisbie v. Frisbie, 226 Minn. 435, 33 N. W. (2d) 23; 1 Dunnell, Dig. & Supp. § 411, and cases cited.

An attempt to make a more detailed statement and discussion of the evidence in this case would extend the opinion to an unreasonable length. Suffice to say that it is our opinion that there was evidence to sustain the findings of the trial court. Our function as an appellate court does not require us to discuss and review in detail the evidence for the purpose of demonstrating that it supports the trial court's findings. Our duty is performed when we consider all the evidence, as we have done here, and determine that it reasonably supports the findings.

Another thing which we have considered here is that this case has been tried twice. The results in each case have been substantially the same. Where a verdict is a second or succeeding verdict and is in accordance with the prior verdict, the reviewing courts are less inclined to set it aside than if it were a first verdict. State v. Drescher, 222 Minn. 120, 23 N. W. (2d) 533, and cases cited.

Affirmed.

---

[1]Reported in 47 N. W. (2d) 870.