*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0314**

In re the Marriage of:
Crystol Kevan Caudullo, petitioner,
Appellant,

vs.

Michael Anthony Caudullo,
Respondent.

**Filed February 22, 2016
Affirmed in part, reversed in part, and remanded
Kirk, Judge**

St. Louis County District Court
File No. 69HI-FA-14-7

Richard E. Prebich, Rachel C. Sullivan, Prebich & Sullivan, P.C., Hibbing, Minnesota (for appellant)

Michael Anthony Caudullo, Hibbing, Minnesota (pro se respondent)

Elizabeth J. Richards, Minnesota Coalition for Battered Women, St. Paul, Minnesota (for amicus curiae Minnesota Coalition for Battered Women)

Considered and decided by Stauber, Presiding Judge; Kirk, Judge; and Minge, Judge.\*

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**KIRK**, Judge

Appellant-mother challenges the district court's award of joint physical custody and denial of her motion for a new trial due to newly discovered evidence. Because the district court did not abuse its discretion by denying mother's motion for a new trial, we affirm that ruling. But because respondent-husband failed to rebut the presumption against joint physical custody arising from his domestic abuse of mother, we reverse the district court's award of joint physical custody.

## FACTS

In January 2014, appellant-mother Crystol Kevan Caudullo filed for dissolution of her seven-year marriage to respondent-father Michael Anthony Caudullo. At that time, the parties had four minor children between one and seven years of age. Mother sought joint legal custody and sole physical custody of the children. Father filed a counter petition, requesting sole legal and sole physical custody of the children. After a hearing, the district court issued an order awarding the parties temporary joint legal custody and mother temporary sole physical custody, subject to father's parenting time. The district court also appointed a guardian ad litem (GAL) to advocate for the best interests of the children.

At trial, mother testified that father emotionally and physically abused her, the children, and the household pets. She indicated that father screamed and yelled at her, that he would get angry when she declined his sexual advances, and that he called her derogatory names. She claimed that father acted aggressively towards the children by spanking them too hard and playing too roughly with them. She testified that father

2

pinched one of their children, which left a red mark on the child's body. Mother also alleged that father abused the family's puppy.

Mother detailed incidents of what she believed was past abuse by father. She described a domestic dispute during which father threw several of the children's toys at the back of her head, including an air-hockey table. The record contains a photo allegedly showing the room's disarray and the broken air-hockey table after the fight. Mother described another incident where father became furious over her request for help in hanging a picture and threw his cellphone at her.

Mother testified that, in 2013, she and father received marital counseling from Linda Albertson, MSEd, LMFT, a family therapist at Turning Point Counseling. While Albertson did not testify at trial, her notes from her joint counseling sessions with the parties were entered into evidence. Albertson's handwritten counseling notes reflect that she met with the parties on eight separate occasions from June 21, 2013 through November 21, 2013.

Albertson's notes do not show that she ever conducted a domestic-violence screening or assessment of the parties. Father offered no testimony on the completion of a domestic-violence screening by Albertson or that any discussion of domestic violence took place during joint counseling or his individual counseling with Albertson. Albertson's July 26 counseling notes indicate that mother had just learned of father's ongoing extra-marital affair and that, while she was hurt by father's admission of infidelity, she was determined to save the marriage. Mother testified that the joint counseling sessions ended in November 2013.

On January 1, 2014, mother testified that she was sleeping in bed and father was lying next to her. When she refused his request to have sex, he masturbated, ejaculated into his hand, and then slapped her in the face with his ejaculate. Mother testified that shortly afterwards she filed for divorce.

Father disputed some of mother's testimony. He generally denied making unwanted sexual advances towards mother, and claimed that he and mother called each other names in a playful, humorous way. While he denied injuring the children, he admitted that he would wrestle with one of them and that the child would occasionally get hurt.

However, father either admitted to or failed to dispute many of mother's allegations of abuse. For example, he never disputed pinching one of the children. While the district court stated that father disputed abusing the dog, we cannot find any evidence in the record where father specifically denied those allegations.

Father did not dispute that he would scream and yell at mother. He admitted that, during one fight with mother, he lost control, flipped the air-hockey table, causing the "toys [to go] flying." Father characterized the fight as "[a]nother marital dispute," and said he "just regretted it after [he] did that." Father offered no testimony concerning mother's allegation that he threw a cellphone at her in the fall of 2013. Father admitted to slapping mother with a handful of his ejaculate in January 2014 and that he "felt extremely bad after it happened."

After the birth of the parties' first child, father testified that they saw a "re[v]olving door" of therapists to address their marital problems. Some of the parties' marital counseling records were admitted into evidence. A psychologist's notes from a 2010

marital-counseling session indicated that mother believed that father had mental-illness issues and that she did not expect their relationship to improve until he "got off the roller coaster."

By 2010, father was diagnosed with a generalized anxiety disorder and depression. By that time, he had seen seven or eight mental-health professionals, and he had consistently dealt with anxiety and depression. Father's medical records show that he was also diagnosed with panic disorder without agoraphobia, relationship problems, excessive stress, and a sleep disturbance. In March 2014, father's physician directed him to continue his prescribed medications to treat his anxiety and depression, and instructed father to follow up with her in one month, if not sooner. But father confirmed at trial that he was not taking any of his prescribed medications or receiving mental-health counseling. Father testified that he was willing to continue to seek assistance for his mental-health needs in the future if he felt that it is necessary.

The GAL testified and the district court admitted her reports dated June 5, 2014, and June 26, 2014, into evidence. In the June 5 report, the GAL recommended that the parties share joint legal custody and that mother be granted sole physical custody. The GAL wrote, "[mother] indicates that [father's] mental health is not stable. [Father] did have his mental health evaluated by professionals, took medication for situational depression, and is seeing a counselor at this time." In a section entitled "areas of concern," the report stated that, "[Mother] expressed sadness and frustration when she recounted the areas of alleged intimidation, name calling, and control her husband used during their marriage. She also feels [father's] mental health is not stable."

5

But in the June 26 report, the GAL amended her earlier recommendation that mother have sole physical custody and instead recommended that the parties share joint physical custody. At trial, the GAL testified that, while she knew that father had admitted to many of mother's allegations, she changed her physical custody recommendation because Albertson had informed her that she had conducted a "pretty extensive domestic violence screening" on the parties and that Albertson did not see any indication during her counseling sessions indicating that joint physical custody would not work. The GAL admitted that she had never previously worked with Albertson and that she did not know Albertson professionally. The GAL acknowledged that she knew Albertson had stopped seeing the parties for marital counseling in the fall of 2013, and that she had continued to individually counsel father.

In September, the district court issued its findings of fact, conclusions of law, and order for judgment, dissolving the parties' marriage and awarding the parties joint legal and joint physical custody. In its analysis of the best-interests factors, as outlined in Minn. Stat. § 518.17, subd. 1 (2014), the district court found that 10 of the factors were neutral, meaning that they weighed equally between the parties, two factors did not apply, and one factor, the children's primary caretaker, weighed in favor of mother.

Notably, the district court found that the domestic-abuse-best-interests factor was neutral. It found:

> There is no history of domestic abuse in this case and there have been no reports of domestic abuse between these parties prior to the allegations [m]other leveled against [f]ather at trial. . . . *Father does not dispute the accuracy of much of what [m]other says he has said and done*. There is, however, no

6

showing that [f]ather's interactions with [m]other have directly affected the children.

. . . .

*. . . The court does find that [f]ather has, at times, been inappropriate in his roughhousing with [one of the parties' children].*

Mother also alleges that father abused and intimidated family pets in front of the children. Father disputes this. There is insufficient corroboration of [m]other's testimony on this issue for the court to find that [f]ather has, in fact, abused family pets in front of the children.

. . . .

The [GAL] spoke with Linda Albertson, the family therapist that worked with [m]other and [f]ather as a couple and continued to work with father thereafter. *The [GAL] reported that Ms. Albertson conducted a thorough domestic violence screening, spoke with both parties, and neither party raised any domestic violence issues with her. According to the GAL's report, Ms. Albertson did not see any reason that 50/50 physical and legal custody would not work well between [m]other and [f]ather.*

(Emphasis added.)

The district court adopted the GAL's recommendation and ordered that father have current parenting time on alternating weekends and two weekday evenings, transitioning to an alternating week schedule once their youngest child started kindergarten.

In October, mother moved for amended findings or a new trial, arguing that: (1) the district court erred in its findings on several best-interests factors; (2) it failed to consider the joint-custody factors; (3) it failed to recognize that father had admitted to committing

7

acts of domestic abuse; and (4) it should grant her a new trial based on newly discovered evidence.

In December, the district court filed its order to amend the judgment and memorandum. It amended its domestic-abuse finding to state that father had admitted to domestic abuse when he slapped mother with his ejaculate. In light of its amended finding of domestic abuse, the district court addressed the four joint-custody factors under Minn. Stat. § 518.17, subd. 2 (2014), and ultimately affirmed its conclusion that it was in the best interests of the children for the parties to share joint physical custody. Regarding the fourth joint-custody factor, the district court downplayed mother's allegations of domestic abuse in the relationship. "Father committed domestic abuse against [m]other when he slapped her in the face with a handful of semen. It is important to note that what occurred in this case was situational . . . [F]ather's improper conduct was a product of the parties' circumstances and father's depression."

The district court declined to modify its findings on several best-interests factors, except for the twelfth factor, which requires the court to examine the effect of an abuser's actions on the children. Again, the district court minimized the abuse, finding that the one incident of domestic abuse does not appear to have affected the children because they were not present, and that the GAL's reliance upon Albertson's recommendation for joint physical custody, which was hearsay, was not damaging to the GAL's conclusions.

Mother appeals.

## DECISION

### I. The district court abused its discretion in its custody and parenting-time determinations.

"Appellate review of a custody determination is limited to determining whether the district court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Zander v. Zander*, 720 N.W.2d 360, 365-66 (Minn. App. 2006), *review denied* (Minn. Nov. 14, 2006). We reverse a district court's findings only when they are "clearly erroneous or manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Gada v. Dedefo*, 684 N.W.2d 512, 514 (Minn. App. 2004) (quotation omitted).

When a party seeks joint custody, the district court is required to consider four statutory factors enumerated in Minn. Stat. § 518.17, subd. 2(b): (1) the parents' ability to cooperate, (2) their methods of resolving disputes, (3) whether it would be detrimental to the children for one parent to have sole authority over the children's upbringing, and (4) whether domestic abuse has occurred between the parents. When the district court finds that domestic abuse has occurred, it must apply a rebuttable presumption that joint physical custody is not in the best interests of the children. Minn. Stat. § 518.17, subd. 2.

Mother challenges the district court's findings on all of the four joint-custody factors, but concentrates the bulk of her argument to the fourth factor, which requires an examination of whether domestic abuse has occurred between the parents. We begin our analysis there. She asserts that the district court erred when it concluded that father had rebutted the statutory presumption against joint custody. The Minnesota Coalition for

9

Battered Women submitted an amicus brief in this appeal asserting that the district court failed to correctly apply the statutory rebuttable presumption.

The district court's finding of domestic abuse triggered the statutory presumption that joint physical custody is not in the best interests of the children. *See* Minn. Stat. § 518.17, subd. 2; *see also* Minn. R. Evid. 301 1977 comm. cmt. (stating that a presumption is triggered "[o]nce the basic facts that give rise to the presumption are established"). In order to rebut this statutory presumption, father had to present sufficient evidence to justify a finding that joint custody is in the children's best interests. *See* Minn. R. Evid. 301 1977 comm. cmt. ("If sufficient evidence is introduced that would justify a finding of fact contrary to the assumed fact the presumption is rebutted and has no further function at trial."). Father's slapping of mother with his ejaculate constitutes domestic abuse under Minn. Stat. § 518B.01, subd. 2(a)(3) (2012). *See* Minn. Stat. § 609.341, subd. 11(a)(v) (2012), and Minn. Stat. § 609.345, subd. 1(c) (2012).

Here, father carried the burden of proving to the district court that he was mentally sound enough to co-parent with mother and that he was receiving effective treatment for his mental-health and domestic-abuse issues. Father's medical records, which were admitted at trial, demonstrate a history of depression and anxiety. At the time of the January 2014 assault, the joint marital counseling had ended, but father continued to receive individual counseling from Albertson. Yet, he presented no evidence at trial that: (1) he ever informed Albertson about the January 2014 assault; and (2) that he had dealt with this serious issue with any kind of treatment or counseling. He failed to call Albertson as a witness to establish whether she was aware of his domestic abuse of mother, to explain

10

the contents of her counseling notes, or why she believed that he posed no threat to mother after the divorce. He also failed to call his physician as a witness to testify about his prescription regimen for treating his depression and anxiety.

Turning to the first joint-custody factor, the parties' ability to cooperate, mother argues that the district court erred because her "interaction with [f]ather will always be against the backdrop of [f]ather's assault and pervasive history of abuse." *See* Minn. Stat. § 518.17, subd. 2. Father's domestic abuse of mother undermines the ability of the parties to cooperate in sharing joint physical custody.

The district court's analysis of the second joint-custody factor is not supported by the record. The district court found that, while the parents did not present evidence regarding dispute resolution methods, they had shown the ability to effectively communicate through text messages and could use mediation to resolve future parenting disagreements. But when there is probable cause that one of the parties has been physically abused by the other party, the district court shall not require or refer the parties to mediation at least without requiring counsel to be present. Minn. Stat. § 518.619, subd. 2 (2014); *see also* Minn. R. Gen. Pract. 310.01(b) (stating, in relevant part, that the district court shall not require parties to participate in a facilitative process if there is probable cause that one of the parties has been physically abused by the other party unless the parties are advised by counsel and agree to a process that does not require a face-to-face meeting).

The third joint-custody factor requires the district court to determine whether it would be detrimental to the children if one parent had sole authority over the children's upbringing. *See* Minn. Stat. § 518.17, subd. 2. Here, the district court relied in part on the

11

GAL's observations that both parties were fit to care for the children, that the children were happy and comfortable in both parent's homes, and that the children wanted more time with father.

However, the underlying information primarily supporting the GAL's changed recommendation for joint physical custody was flawed. The GAL testified that the reason for changing her custody recommendation was Albertson's declaration that there was no evidence of domestic violence between the parties and that they could successfully share joint physical custody. However, as explained above, the record does not support these findings. Albertson's handwritten notes are largely unreadable, but do not appear to mention a domestic-violence screening of the parties. Because Albertson stopped meeting with mother well before the January 1, 2014 assault, she was likely unaware of it. And, as mentioned earlier, there is no evidence in the record that father ever informed Albertson of the assault or that the parties discussed domestic violence in counseling. There is also nothing in the record indicating what Albertson meant when she stated to the GAL that she had completed a "domestic violence screening."

The GAL essentially deferred to Albertson to make the recommendation on joint physical custody, despite never working with her before or knowing her personally. The GAL's June 6 report notes that she had reviewed the parties' filings, which included mother's allegation of several incidents of domestic abuse. But the GAL never revisited mother to discuss the allegations of abuse after her conversation with Albertson. Albertson's notes and verbal communications to the GAL do not reflect that she was aware of the serious conflict in this relationship and, most importantly, the domestic assault of

12

mother by father. Moreover, the fact that Albertson continued to counsel father after the joint counseling sessions had ended may very well have influenced her impartiality in making a recommendation involving both parties, which should have raised a red flag for the GAL.

Father did not present sufficient evidence to rebut the presumption against joint physical custody in light of his abusive conduct. Because father did not rebut the presumption, we reverse the district court's conclusion that joint physical custody is appropriate in this case and grant mother sole physical custody of the minor children. We remand to the district court to order parenting time consistent with this opinion.

## II. The district court needs to reconsider its best-interests findings.

The law "leaves scant if any room for an appellate court to question the [district] court's balancing of best-interests considerations." *Vangsness v. Vangsness*, 607 N.W.2d 468, 477 (Minn. App. 2000). We need not "discuss and review in detail the evidence for the purpose of demonstrating that it supports the [district] court's findings." *Wilson v. Moline*, 234 Minn. 174, 182, 47 N.W.2d 865, 870 (1951). As an appellate court, our role is satisfied when we consider all of the evidence and conclude that the record "reasonably supports the findings." *Id.*

Mother challenges the district court's findings on several best-interests factors. In light of our holding that father failed to rebut the presumption against joint custody where domestic abuse has occurred, the district court should review and modify, where appropriate, its findings on the best-interests factors.

**III.    The district court did not err in denying mother's motion for a new trial.**

We review the district court's decision whether to reopen a dissolution judgment under Minn. Stat. § 518.145, subd. 2 (2014), for an abuse of discretion. *Kornberg v. Kornberg*, 542 N.W.2d 379, 386 (Minn. 1996). Mother argues that the district court abused its discretion in denying her motion for a new trial based on "newly discovered evidence" that father's girlfriend and son had permanently moved in with father, exposing the children to more changes.

Relying on *Bruno v. Belmonte*, 252 Minn. 497, 502-03, 90 N.W.2d 899, 903 (1958), the district court properly found that mother's "newly discovered evidence" would not lead to a different result in a new trial, as father's relationship with the girlfriend and the presence of another adult in the home were positive developments.

**Affirmed in part, reversed in part, and remanded.**