*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0906**

State of Minnesota,
Respondent,
Ramsey County,
Respondent,
City of St. Paul,
Respondent,

vs.

R. M. W.,
Appellant.

**Filed December 27, 2016
Affirmed in part, reversed in part, and remanded
Stauber, Judge**

Ramsey County District Court
File No. 62-CR-14-3978

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Laura Rosenthal, Assistant County Attorney, Michelle Johnson, Certified Student Attorney, St. Paul, Minnesota; and

Samuel J. Clark, St. Paul City Attorney, St. Paul, Minnesota (for respondents)

Meghan R. Scully, Stephen Dekovich, Charles H. Thomas, Law Offices of Southern Minnesota Regional Legal Services, Inc., St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Worke, Judge; and Bratvold, Judge.

**STAUBER**, Judge

On appeal from an order denying his petition to expunge records after he was acquitted of first-degree criminal sexual conduct, appellant argues that (1) the district court erred by considering the 12 factors set forth in Minn. Stat. § 609A.03, subd. 5(c) (2014), in determining whether to grant the expungement petition and (2) even if the district court properly considered those 12 factors, the court's application of the factors was an abuse of discretion. Because the plain language of the statute requires consideration of the 12 factors, we affirm the district court's decision to consider them. But because the district court abused its discretion by improperly applying the factors in a manner that assumes appellant's guilt when, in fact, appellant was acquitted of the charged offense, we reverse and remand for reconsideration of the 12 factors contained in section 609A.03, subdivision 5(c).

## FACTS

Appellant R.M.W. is a disabled veteran who, in 2014, lived in a subsidized apartment that is owned and operated by the St. Paul Public Housing Agency (PHA). In June 2014, appellant R.M.W. was charged with first-degree criminal sexual conduct in violation of Minn. Stat. § 609.342, subd. 1(e)(1)(i), (2012)—using force or coercion to accomplish sexual penetration and causing injury. The complaint alleged that appellant, along with another person, were at the apartment of the alleged victim, and that the trio were drinking. The complaint also alleged that after the third person left the apartment, appellant "held [the alleged victim] down, bent her over a recliner in the living room, pulled down her

2

clothes, and forced her to have vaginal intercourse with him." The complaint further alleged that "[d]uring the assault, blood ran down [the alleged victim's] leg into her underwear, which w[ere] around her ankles." According to the alleged victim, she "felt constant pain in her vaginal area and stomach" as a result of the assault. Appellant admitting having intercourse with the alleged victim, but claimed that the sex was consensual.

In light of the alleged sexual assault, PHA filed an unlawful-detainer action against appellant on June 23, 2014, seeking to evict him from his subsidized apartment. The unlawful-detainer action was then stayed pending the outcome of the criminal case. The criminal case was resolved in September 2014, when a jury acquitted appellant of the first-degree criminal-sexual-conduct charge.

In December 2014, appellant and PHA reached an agreement to settle the unlawful-detainer action. Under the terms of the agreement, appellant agreed not to contest the termination of his tenancy, and to vacate his apartment by the end of March 2015. Conversely, PHA agreed to "provide a neutral housing reference in response to future inquiries regarding [appellant's] rental history with PHA."

On October 28, 2015, appellant filed a petition to expunge the records relating to the first-degree criminal-sexual-conduct charge. Appellant claimed that he was "seeking an expungement because although [he] was found not guilty" of first-degree criminal sexual conduct, he lost his "subsidized housing and ha[s] since struggled to find new affordable housing." Respondents Ramsey County, Minnesota Department of Health and Department of Human Services, and the City of St. Paul, opposed appellant's petition.

A hearing was held on appellant's expungement petition in January 2016, at which the alleged victim appeared and objected to appellant's request for expungement. Following the hearing, the district court concluded that because a jury found appellant not guilty of the first-degree criminal-sexual-conduct charge, the matter was determined in his favor. Thus, the district court found that appellant was "presumptively entitled to expungement" under Minn. Stat. § 609A.02, subd. 3(a)(1) (2014). The district court then found that the burden of persuasion shifts to the parties opposing the petition, and that "based on an analysis of the reason for [appellant's] request and the facts applicable" to the 12 factors set forth in Minn. Stat § 609A.03, subd. 5(c), "there is clear and convincing evidence that the public's interest in keeping the records unsealed outweighs the disadvantages to [appellant] in not sealing the records." Therefore, the district court denied appellant's petition. This appeal followed.

## D E C I S I O N

Appellant challenges the district court's decision to deny his petition for expungement. He argues that the district court erred by considering the 12 factors set forth in Minn. Stat. § 609A.03, subd. 5(c). Appellant argues further that even if the district court was required to consider the 12 factors, the court's application of those factors was an abuse of discretion.

This court reviews a district court's expungement decision for abuse of discretion. *State v. M.D.T.*, 831 N.W.2d 276, 279 (Minn. 2013). "Under an abuse of discretion standard, we will not overrule the district court unless the court exercised its discretion in an arbitrary or capricious manner or based its ruling on an erroneous interpretation of the

4

law." *State v. R.H.B.*, 821 N.W.2d 817, 822 (Minn. 2012). We review a district court's findings of fact supporting expungement for clear error. *State v. A.S.E.*, 835 N.W.2d 513, 517 (Minn. App. 2013). But the "interpretation of the expungement statute is a legal question subject to de novo review." *State v. D.R.F.*, 878 N.W.2d 33, 35 (Minn. App. 2016) (quotation omitted).

A. **Applicability of the 12 factors contained in Minn. Stat. § 609A.03, subd. 5(c)**

Minnesota Statutes chapter 609A provides the grounds and procedures for expungement of criminal records. Minn. Stat. § 609A.01 (2014). This chapter provides that "[a] petition may be filed under section 609A.03 to seal all records relating to an arrest, indictment or information, trial, or verdict . . . if . . . all pending actions or proceedings were resolved in favor of the petitioner." Minn. Stat. § 609A.02, subd. 3(a)(1) (2014). A jury verdict of "not guilty" is a resolution "in favor of" the petitioner. *State v. Ambaye*, 616 N.W.2d 256, 259 (Minn. 2000). If a petition to seal the record has been filed under Minn. Stat. § 609A.02, subd. 3(a)(1), "the court shall grant the petition . . . unless the agency or jurisdiction whose records would be affected establishes by clear and convincing evidence that the interests of the public and public safety outweigh the disadvantages to the petitioner of not sealing the record." Minn. Stat. § 609A.03, subd. 5(b) (2014).

The Minnesota Supreme Court explained that when Minn. Stat. § 609A.02, subds. 3(a)(1) and (2), are read together with Minn. Stat. § 609A.03, subd. 5(b), they create a "two-step procedure for statutory expungement." *R.H.B.*, 821 N.W.2d at 821. Under

5

step one, if all pending criminal actions or proceedings have been resolved "in favor of" an individual, he may petition the district court to seal the records related to the action or proceeding, and there is a statutory presumption that the court will grant the petition. *Id.* Once a petitioner meets the legal threshold set forth in section 609A.02, subd. 3(a)(1), or (2), he is "presumptively entitled to expungement." *Id.* (quotations omitted). But the statutory presumption is not absolute; rather "it is a rebuttable statutory presumption that shifts the burden of persuasion to the opposing party." *Id.* (quotations omitted). Under the second step, the agency or jurisdiction holding the record may prevent expungement if it satisfies its burden of persuasion set forth in section 609A.03, subdivision 5(b). *Id.*

In 2014, the legislature amended Minn. Stat. § 609A.03, subd. 5, to add 12 factors for the district court to consider "[i]n making a determination under th[at] subdivision." 2014 Minn. Laws ch. 246, § 10, at 815-16. These factors include:

> (1)   the nature and severity of the underlying crime, the record of which would be sealed;
> (2)   the risk, if any, the petitioner poses to individuals or society;
> (3)   the length of time since the crime occurred;
> (4)   the steps taken by the petitioner toward rehabilitation following the crime;
> (5)   aggravating or mitigating factors relating to the underlying crime, including the petitioner's level of participation and context and circumstances of the underlying crime;
> (6)   the reasons for the expungement, including the petitioner's attempts to obtain employment, housing, or other necessities;
> (7)   the petitioner's criminal record;
> (8)   the petitioner's record of employment and community involvement;
> (9)   the recommendations of interested law enforcement, prosecutorial, and corrections officials;

6

(10)  the recommendations of victims or whether victims of the underlying crime were minors;
(11  the amount, if any, of restitution outstanding, past efforts made by the petitioner toward payment, and the measures in place to help ensure completion of restitution payment after expungement of the record if granted; and
(12)  other factors deemed relevant by the court.

Minn. Stat. § 609A.03, subd. 5(c).

Here, the district court considered the 12 factors contained in Minn. Stat. § 609A.03, subd. 5(c), in concluding that respondents met their burden of persuasion that the interests of the public and public safety outweigh the disadvantages to appellant of not sealing his record.  Appellant contends that this decision is erroneous.  He argues that because he was acquitted of the first-degree criminal-sexual-conduct charge, his "petition falls solely within the scope of Minn. Stat. § 609A.03, subd. 5(b)."  Thus, appellant argues that the district court erred by applying the 12 factors set forth in section 609A.03, subdivision 5(c).

Appellant's argument raises questions about how the expungement statute is interpreted.  "Statutory interpretation is a question of law that is reviewed de novo." *In re Welfare of J.T.L.*, 875 N.W.2d 334, 336 (Minn. App. 2015).  The object of statutory interpretation "is to ascertain and effectuate the intention of the legislature."  Minn. Stat. § 645.16 (2014).  "In interpreting statutory language, words and phrases are to be given their plain and ordinary meaning." *J.T.L.*, 875 N.W.2d at 336.  "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit."  Minn. Stat. § 645.16.

7

We conclude that based upon the plain language of the applicable expungement statutes, the district court was required to apply the 12 factors set forth in Minn. Stat. § 609A.03, subd. 5(c). Subdivision 5 of section 609A.03 consists of several paragraphs, with paragraphs (a) and (b) establishing the burdens to be satisfied in expungement cases. Minn. Stat. § 609A.03, subd. 5. Paragraph (a) of subdivision 5 provides:

> Except as otherwise provided by paragraph (b), expungement of a criminal record is an extraordinary remedy to be granted only upon clear and convincing evidence that it would yield a benefit to the petitioner commensurate with the disadvantages to the public and public safety of:
> (1) sealing the record; and
> (2) burdening the court and public authorities to issue, enforce, and monitor an expungement order.

Minn. Stat. § 609A.03, subd. 5(a).

In contrast to paragraph (a), paragraph (b) of subdivision 5 applies to the expungement of criminal records when a case has been resolved in the petitioner's favor. Minn. Stat. § 609A.03, subd. 5(b). Specifically, that paragraph provides:

> Except as otherwise provided by this paragraph, if the petitioner is petitioning for the sealing of a criminal record under section 609A.02, subdivision 3, paragraph (a), clause (1) or (2), the court shall grant the petition to seal the record unless the agency or jurisdiction whose records would be affected establishes by clear and convincing evidence that the interests of public and public safety outweigh the disadvantages to the petitioner of not sealing the record.

*Id.*

Finally, paragraph (c) of subdivision 5 states: "In making a determination under this subdivision, the court shall consider [the following 12 factors]." Minn. Stat. § 609A.03, subd. 5(c). This language is clear and unambiguous. The language "this

8

subdivision" is a clear reference to subdivision 5, meaning paragraph (c) is applicable to both paragraph (a) and paragraph (b). Thus, under the plain language of paragraph (c) of subdivision 5, the district court is to consider the 12 factors set forth in that paragraph "[i]n making a determination" of whether the burden of persuasion has been satisfied under either paragraph (a) or paragraph (b) of that subdivision. And the use of the word "shall" in Minn. Stat. § 609A.03, subd. 5(c), means that the consideration of the 12 factors is mandatory. *See* Minn. Stat. § 645.44, subd. 16, (2014) (providing that "'[s]hall' is mandatory").

Appellant argues that the 12 factors set forth in section 609A.03, subdivision 5(c), only apply to section 609A.03, subdivision 5(a). To support his claim, appellant relies on the language "[e]xcept as otherwise provided by paragraph (b)," which appears at the beginning of paragraph (a). *See* Minn. Stat. § 609A.03, subd. 5(a). Appellant argues that the 12 factors set forth in paragraph 5(c) apply to paragraph 5(a), but the language "[e]xcept as otherwise provided by paragraph (b)" demonstrates that the language of paragraph 5(b)—instead of paragraph 5(a)—applies to any expungement petition authorized to be brought by the terms of Minn. Stat. § 609A.02, subd. 3(a)(1) or (2).

Appellant's argument misconstrues the "[e]xcept as otherwise" language contained in subdivision 5(a). As this court has recognized, Minn. Stat. § 609A.03, subds. 5(a) and (b), are "complementary and must be read together." *State v. L.W.J.*, 717 N.W.22d 451, 456 (Minn. App. 2006). The "[e]xcept as otherwise provided in paragraph (b)" language demonstrates the two different burdens contained in subdivision 5(a) and subdivision 5(b). Minn. Stat. § 609A.03, subd. 5(a), states that "[e]xcept as otherwise

provided in paragraph (b)," if a petitioner has not established a resolution of proceedings in his favor, *he has the burden* to establish by clear and convincing evidence that expungement of his criminal records "would yield a benefit to the petitioner commensurate with the disadvantages to the public and public safety." (Emphasis added.) Paragraph (b) is different from paragraph (a) because if a petitioner establishes a resolution of proceedings in his favor, *the burden shifts to the "agency or jurisdiction whose records would be affected"* by the expungement to establish "by clear and convincing evidence that the interest of the public and public safety outweigh the disadvantages to the petitioner of not sealing the record." Minn. Stat. § 609A.03, subd. 5(b) (emphasis added). Thus, "[w]hen read together, it is clear that subdivision 5(a) limits the application of subdivision 5(b) to petitions for expungement that involve proceedings resolved in favor of the petitioner." *L.W.J.*, 717 N.W.2d at 456.

Moreover, appellant's argument ignores the language of subdivision 5(c), which states that "[i]n making a determination under this subdivision, the court shall consider" the 12 factors listed in that paragraph. Minn. Stat. § 609A.03, subd. 5(c). As stated above, this language unambiguously applies to both paragraphs (a) and (b) of subdivision 5. If the legislature had intended for paragraph 5(c) to apply only to paragraph 5(a), it surely would have included language stating "[i]n making a determination under subdivision 5(a)" rather than "[i]n making a determination under this subdivision." *See* Minn. Stat. § 609A.03, subd. 5(c). It did not. It is well settled that we may not supply statutory language that may have been intentionally or inadvertently omitted by the legislature. *See Great River Energy v. Swedzinski*, 860 N.W.2d 362, 364 (Minn. 2015);

10

*see also State v. Hulst*, 510 N.W.2d 262, 264 (Minn. App. 1994). Therefore, the district court did not err by applying the 12 factors set forth in Minn. Stat. § 609A.03, subd. 5(c).

### B. Application of the 12 factors

Appellant argues that even if the district court was required to consider the 12 factors contained in Minn. Stat. § 609A.03, subd. 5(c), the court's application of those factors to the facts of his case was an abuse of discretion. Specifically, appellant challenges the district court's findings with respect to the sixth factor, arguing that the district court abused its discretion "in finding that the reason expungement was sought did not weigh in favor of [appellant]." Appellant also challenges the district court's findings as they relate to the factors that contemplate the "crime" or the "underlying crime."

#### 1. Factor six

The sixth factor listed in Minn. Stat. § 609A.03, subd. 5(c), requires the district court to consider "the reasons for expungement, including the petitioner's attempts to obtain employment, housing, or other necessities." Minn. Stat. § 609A.03, subd. 5(c)(6). With respect to this factor, the district court found:

> [Appellant] seeks this expungement primarily due to a housing hardship. However, [appellant] misrepresents this alleged hardship. [Appellant] states he's requesting expungement because he lost his subsidized housing as a result of a criminal sexual conduct charge and has struggled to find new affordable housing. [Appellant] vacated his subsidized housing based on his own agreement which was documented in the court settlement and vacate agreement he signed in Court File: 62-HG-CV-14-1673. In addition, [appellant] argues he was denied public housing, but he was successful on appeal and is currently on a waiting list. In addition, [appellant]

11

currently does have housing. This factor is at best neutral, however [appellant's] misrepresentation of the facts is concerning.

Appellant argues that the district court's findings with respect to the sixth factor are clearly erroneous because "it was the criminal charge that led directly to [his] choice either to be evicted or voluntarily vacate." He further claims that the evidence demonstrates that "[d]espite being acquitted by a jury, [his] arrest and the charge brought against him presented barriers to finding stable housing that is affordable to him on his limited financial basis." Thus, appellant argues that the district court abused its discretion by finding that the sixth factor did not weigh in his favor.

We disagree. It is the district court's prerogative to weigh evidence and make credibility determinations. *See DeMars v. State*, 352 N.W.2d 13, 16 (Minn. 1984) (stating that it is district court's role to weigh conflicting testimony and assess witness credibility). The district court acknowledged appellant's claimed hardship, but found that appellant "misrepresent[ed] [his] alleged hardship." The district court apparently based this conclusion on the fact that appellant voluntarily settled the unlawful-detainer action with the PHC and "currently" has housing. These findings are supported by the record. As was within its discretion, the district court weighed this evidence and concluded that the sixth factor was "at best neutral." It is not our role to reweigh the evidence presented to the district court. *Vangsness v. Vangsness*, 607 N.W.2d 468, 475 (Minn. App. 2000). An appellate court's "duty is performed when [it] consider[s] all the evidence . . . and determine[s] [whether] it reasonably supports the [district court's] findings." *Wilson v. Moline*, 234 Minn. 174, 182, 47 N.W.2d 865, 870 (1951). Thus, although we may have

12

found that the sixth factor weighs in favor of appellant, the district court's determination in this case does not rise to the level of an abuse of discretion. *Vangsness*, 607 N.W.2d at 474 ("That the record might support findings other than those made by the [district] court does not show that the court's findings are defective."); *see Elliott v. Mitchell*, 311 Minn. 533, 535, 249 N.W.2d 172, 174 (1976) (affirming findings, but noting that evidence might have supported another conclusion); *Zander v. Zander*, 720 N.W.2d 360, 368 (Minn. App. 2006) (observing that, while the record could support a different decision, "this court may not substitute its judgment for that of the district court"), *review denied* (Minn. Nov. 14, 2006).

### 2. Factors contemplating the "crime" or "underlying crime"

Appellant also challenges the district court's application of several of the factors that refer to the "crime" or the "underlying crime." He claims that the district court applied these factors "in a manner that assumes criminal culpability when [appellant] was acquitted by a jury." Thus, appellant argues that the district court abused its discretion in weighing the 12 factors because the court "selectively and arbitrarily failed to give deference to the jury's not guilty verdict."

The first factor contained in Minn. Stat. § 609A.03, subd. 5(c), refers to the "nature and severity of the underlying crime." The district court found that this factor "weighs in favor of the interests of the public and public safety because appellant was charged with first-degree criminal sexual conduct, a "serious felony offense." In making this finding, the district court noted that appellant "presented a consent defense and was acquitted," but he "did not deny that sexual penetration occurred, rather the state failed to

13

prove beyond a reasonable doubt that [appellant] used force or coercion to accomplish the penetration."

The second factor requires the district court to consider "the risk, if any, the petitioner poses to individuals or society." Minn. Stat. § 609A.03, subd. 5(c)(2). The district court addressed this factor as follows:

> [Respondents] argue[] that [appellant] poses a risk to public safety in that [appellant] intentionally selected this victim due to her age and vulnerability. In arguing against expungement, the victim stated that she felt preyed upon because she was trusting yet vulnerable to [appellant]. This factor weighs in favor of the interests of public safety.

In addressing the third factor, which contemplates the amount of time since the crime occurred, the district court found that because the "length of time since the crime occurred [was] short," that factor weighed in favor of respondents. Similarly, with respect to factor five, which contemplates "aggravating or mitigating factors relating to the underlying crime, including the petitioner's level of participation and context and circumstances of the underlying crime," Minn. Stat. § 609A.03, subd. 5(c)(5), the district court found:

> It does not appear there are any mitigating factors relating to the underlying crime. However, the context and [appellant's] level of participation weigh in favor of the public and public safety. In this case the victim . . . stated she felt preyed upon. She was trusting of [appellant] yet is elderly and vulnerable. This offense took place in the victim's home while [appellant] was there as a guest. This factor weighs in favor of the public and public safety.

14

Finally, factor ten requires the district court to consider "the recommendations of the victims." Minn. Stat. § 609A.03, subd. 5(c)(10). In considering this factor, the district court found:

> At the expungement hearing on January 6, 2016, the victim read a prepared statement. It was clear from her presentation however that she was nervous and afraid and this incident had a significant impact on her. In her prepared statement, she objects to any expungement. However, her physical appearance at the hearing also spoke volumes regarding the negative impact this incident had on her. This factor weighs in favor of the public and public safety.

Respondents claim that factors relating to the underlying charged offense should be considered because "just because a charge was acquitted does not mean it did not occur; rather the State failed to meet its burden in proving it beyond a reasonable doubt." Respondents seem to take the position that, although the state failed to meet its burden of beyond a reasonable doubt at trial, the district court is allowed to re-weigh the evidence at the expungement hearing and determine if there is clear and convincing evidence that a crime occurred and weigh the applicable factors accordingly because the clear-and-convincing standard is the standard set forth in section 609A.03, subdivision 5. But this argument essentially allows the state two bites at the apple. Moreover, respondents' argument flies in the face of the jury's verdict because the jury specifically found that a crime *did not* occur. Appellant was innocent until proven guilty beyond a reasonable doubt. The state failed to meet its burden. To accept the state's argument that appellant is now somehow guilty of that offense seems to turn one of the fundamental principles of our justice system on its head. *See In re Winship*, 397 U.S. 358, 363, 90 S. Ct. 1068,

15

1072 (1970) (stating that the presumption of innocence is "that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law,'" and the reasonable doubt standard of proof "provides concrete substance" for the presumption of innocence).

In addition, the evidence presented at the expungement hearing did not consist of the evidence presented at appellant's criminal trial. As a result, under the respondents' argument, the district court was allowed to determine whether there was clear and convincing evidence of appellant's guilt based solely on the allegations in the complaint and the alleged victim's statement at the expungement hearing that the incident had a significant impact on her. In fact, aside from the evidence pertaining to appellant's housing situation, the only other evidence in the record is the jury's verdict that the allegations in the complaint were not proven. Consequently, the district court's findings with respect to the factors considering the "crime" or "underlying crime" are clearly erroneous because they are not supported by the record. For example, the district court found that the "length of time since the *crime* occurred is short." (Emphasis added.) But because the jury found that no crime actually occurred, this finding is not supported by the record. Moreover, and more importantly, the district court made several findings that characterize appellant's conduct as criminal, such as: (1) appellant "intentionally selected this victim due to her age and vulnerability"; (2) appellant's "level of participation" in the crime; (3) the alleged victim was "elderly and vulnerable"[1]; and (4) the "*offense* took

---

[1] The record reflects that at the time of the offense, the alleged victim was 57 and appellant was 66. Yet despite being only 57, and almost ten years younger than

16

place in the victim's home." (Emphasis added.) Appellant, however, presented a consent defense at trial and the jury acquitted appellant of the charged offense. Because the record reflects that appellant was acquitted of the charged offense, appellant engaged in no criminal behavior, and there was no victim. As a result, these findings are not supported by the record. Furthermore, the district court made several findings that accept the alleged victim's version of the incident, such as: (1) the alleged victim "stated that she felt preyed upon because she was trusting yet vulnerable to [appellant]; (2) "[i]t was clear" from the alleged victim's presentation at the evidentiary hearing that "she was nervous and afraid and this incident had a significant impact on her"; and (3) the alleged victim's "physical appearance at the hearing also spoke volumes regarding the negative impact this incident had on her." To the extent that these findings portray appellant's conduct as criminal and the alleged victim as, in fact, an actual victim, they are not supported by the record.

In sum, because appellant was acquitted of the charged offense, the district court made findings that are unsupported by the record as they apply to appellant's involvement in the alleged offense. As a result, the district court abused its discretion by applying the 12 factors set forth in Minn. Stat. § 609A.03, subd. 5(c) in a light that

---

appellant, the district court characterized the victim as "elderly and vulnerable." The common dictionary definition of "elderly" is "somewhat old; near old age." *Random House Webster's Unabridged Dictionary* 627 (2d ed. 1987). A person 57 years of age would generally not be considered "somewhat old" or "near old age." Moreover, there is nothing in the record suggesting that the alleged victim was vulnerable. Therefore, the district court's finding that the alleged victim was "elderly and vulnerable" is not supported by the record.

assumes guilt of the charged offense. Accordingly, we reverse and remand for the district court to consider the 12 factors in a manner consistent with the jury's verdict of not guilty and the holding of this court.

**Affirmed in part, reversed in part, and remanded.**